In the Supreme Court of Georgia

Decided: July 5, 2016

S16A0393. SMART v. THE STATE.

HUNSTEIN, Justice.

Appellant Norman Smart was convicted of malice murder and related offenses in connection with the beating death of his wife, Lauren Smart, and was sentenced to life imprisonment without the possibility of parole. On appeal, Appellant contends, inter alia, that there was insufficient evidence to sustain his convictions and that the trial court erroneously admitted both character evidence and hearsay testimony. For the reasons that follow, we affirm.[1]

---

[1] In November 2014, a Chatham County grand jury returned an indictment charging Appellant with one count of malice murder, one count of felony murder predicated on aggravated assault, two counts of felony murder predicated on aggravated battery, two counts of aggravated battery - family violence, and one count of aggravated assault - family violence; Appellant was also charged with cruelty to children in the first degree for causing Lauren's death in the presence of her child. Following a trial in December 2014, a jury found Appellant guilty of all counts. After properly merging and vacating offenses, the trial court sentenced Appellant to life without parole for malice murder and 20-years consecutive for cruelty to children in the first degree. In December 2014, Appellant moved for a new trial, and he later amended the motion through new counsel in April 2015. Appellant waived a hearing on the motion – asking that the issues be decided on briefs – and the trial court denied the amended motion on the pleadings in June 2015. This appeal was docketed to the January 2016 term of this Court, and oral argument was heard on March 7, 2016.

Viewed in a light most favorable to the jury's verdict, the evidence at trial established as follows. On the evening of June 6, 2014, a deliveryman making a delivery at the marital residence observed Appellant and Lauren arguing and overheard Appellant state "this B's going to make me F her up." The next morning, Appellant called 911 regarding his wife; officers responded to the marital home and discovered Lauren on the floor next to the couple's bed, obviously deceased. The marital residence showed no sign of forced entry. Appellant, a weightlifter and former professional fighter, reported to police that he had arrived home earlier that morning, at approximately 1:30 a.m., and discovered that his wife was intoxicated. According to Appellant, his wife had lain down on the floor and "passed out" from her alcohol consumption; Appellant told authorities that he covered his wife with a blanket and went to bed but that, when he awoke, he found her unresponsive. In a subsequent letter written from jail, however, Appellant reported that he and Lauren "went to sleep together" and that Lauren had "passed away in her sleep."

A subsequent autopsy revealed that Lauren died from multiple blunt-force traumas and strangulation. Lauren suffered dozens of internal and external injuries, some caused with the force expected from a car crash or long fall. The

medical examiner testified that, "visually," there was a "very high degree of similarity" between injuries on Lauren's body and the sole of a shoe belonging to Appellant. Though Appellant had reported in the 911 call that he was performing CPR on his wife – and a recording of that call captured a rhythmic "squeaking" sound – the medical examiner found no evidence that CPR was performed on Lauren. Likewise, the rhythmic squeaking sounds captured on the 911 call likely came from the couple's mattress, but there was no indication that Lauren's body was on the mattress immediately before or after her death.

Brian Patterson, who worked for Appellant, testified that he repaired a door and door frame in the marital residence that had been "severely damaged" and that, on the night he performed the repairs, Lauren wore sunglasses the entire time. Watson Lee, who was with Patterson that night, testified that he saw Lauren remove her sunglasses and that she had two black eyes. The jury also heard text messages sent by Appellant in which he stated that he was "really going to rattle [Luaren's] brain" and that he was going to "smash her." Finally, the jury heard testimony that, Lauren's son, Brayden, heard Appellant beating his mother and heard her screaming during the fatal assault.

1. The evidence as summarized above was sufficient to enable a rational

3

trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Though Appellant contends that the evidence was insufficient because the State failed to present substantial credible and direct evidence to sustain the conviction for murder, it is axiomatic that resolving evidentiary conflicts and assessing witness credibility are within the exclusive province of the jury. See Hampton v. State, 272 Ga. 284 (1) (527 SE2d 872) (2000).

2. The trial court permitted the State to present the testimony of Katie Tucker, the sister of Appellant's ex-wife, Sarah, regarding prior acts of domestic violence committed by Appellant. Tucker testified that Appellant would threaten Sarah daily, would hit Sarah in such a way so as to leave no visible injury, and that Appellant's "motto" was that "his love is pain." According to Tucker, Appellant would ask Sarah "how many" – referencing punches – and if Sarah said "one," Appellant would punch her twice. Tucker explained that Sarah did not like having her kneecaps touched but that Appellant would often punch her there. Tucker also described an incident in which Sarah, then eight-months pregnant, suspected that Appellant was with another woman in the

4

marital residence. Appellant prevented Sarah from entering the residence and, when Sarah attempted to climb through a broken window, Appellant shoved her out of the window to the ground. Tucker explained that, when the injured and bloody Sarah managed to enter the house, she was forcefully dragged out of the house by Appellant. Appellant now argues that the trial court abused its discretion in admitting this testimony.[2] We disagree.

Because Appellant was tried after January 1, 2013, we utilize Georgia's new Evidence Code to evaluate this claim. Under the new code,

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

OCGA § 24-4-404 (b) ("Rule 404 (b)"). Evidence offered for a proper purpose under this rule may be excluded under OCGA § 24-4-403 ("Rule 403") "if its

---

[2] The State contends that, because Appellant did not object to this testimony at trial, this argument is waived. The record is clear, however, that Appellant made a pre-trial objection to the testimony and that, immediately before trial, the trial court entered an order admitting Tucker's testimony; accordingly, Appellant was not required to lodge a subsequent objection. See OCGA § 24-1-103 (a) ("Once the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal.").

5

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." These rules track their federal counterparts, and this Court has adopted the three-part test used by the Eleventh Circuit Court of Appeals to evaluate the admissibility of other acts evidence. Bradshaw v. State, 296 Ga. 650 (3) (769 SE2d 892) (2015) (adopting the three-part test). The three-part test to utilized by the Eleventh Circuit to determine the admissibility of evidence under Rule 404 (b) is as follows:

> (1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

United States v. Ellisor, 522 F3d 1255, 1267 (11th Cir.2008). See also State v. Jones, 297 Ga. 156 (1) (773 SE2d 170) (2015). Here, the trial court ruled that the testimony was admissible for the purposes of showing defendant's motive to control family members with violence and his intent to harm his intimate partners, as well as to show the absence of mistake or accident. We review this decision for clear abuse of discretion. Bradshaw, 296 Ga. at 656.

(a) Rule 404 (b) prohibits other acts evidence from being admitted for the sole purpose of proving the character of a person in order to show action in conformity therewith, see Jones, 297 Ga. at 159; however, other acts evidence may be admitted under Rule 404 (b) if that evidence is relevant to some issue other than character.  See Olds v. State, ___ Ga. ___, ___ (2) (___ SE2d ___) (2016).  To evaluate relevancy, this Court relies on OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  See also Jones, 297 Ga. at 159.  The trial court concluded that the evidence was relevant to show, inter alia, motive.  "Motive has been defined as 'the reason that nudges the will and prods the mind to indulge the criminal intent.'" (Citation omitted.) United States v. Benton, 637 F2d 1052, 1056 (2) (5th Cir. 1981).

While motive is not an element of any of the charged offenses here, Tucker's testimony was relevant to help the jury understand why Appellant might have used violence against Lauren.  Though Tucker's testimony referenced specific acts of domestic violence, her testimony also revealed the impetus behind that violence: control.  Sarah would ask for one punch, but

7

would get two; Appellant would hit Sarah where she was most sensitive and in a way that would not reveal that violence; and Appellant forcibly removed Sarah from the marital residence when he did not want her there. Accordingly, Tucker's testimony was relevant to the State addressing motive, namely, that Appellant used violence to control Lauren.[3] Cf. United States v. Banks, 514 F3d 959, 976 (9th Cir. 2008) (holding that evidence of the defendant's prior stabbing of someone who insulted his gang status was admissible to prove motive under Rule 404(b) in his trial for attempted murder of someone else who also insulted his gang status).

(b) The mere fact that the evidence was relevant to an issue other than Appellant's character does not end our analysis. We now must address whether "the probative value of the other acts evidence is [] substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403." Jones, 297 Ga. at 159. "The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts, but as we have

---

[3] Because we conclude that Tucker's testimony was admissible to show motive, we need not address whether that testimony was admissible to show intent or absence of mistake or accident.

explained before, the exclusion of evidence under Rule 403 'is an extraordinary remedy which should be used only sparingly.'" (Citations omitted.) Olds, ___ Ga. at ___. "The 'major function' of Rule 403 is to '"exclud[e] matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."'" Hood v. State, ___ Ga. ___ (4) (___ SE2d __ ) (2016).

While the evidence against Appellant was prejudicial – as almost all evidence presented by the State will be – on balance, we agree with the trial court that the probative nature of Tucker's testimony outweighed that prejudice. As discussed above, Tucker's testimony was not elicited merely to show that Appellant had engaged in prior acts of domestic violence, but, instead, it demonstrated that the violence was a mechanism for control of his intimate partners. While the evidence of Appellant's guilt was strong – which tends to lessen the probative value of Tucker's testimony – there was very little evidence from which a jury could have gleaned why Appellant lashed out against his wife. Further, while the evidence in Tucker's testimony was disturbing, there was "nothing inherent in this evidence that would create a risk that [Appellant] would be convicted 'on a ground different from proof specific to the offense charged.'" Banks, 514 F3d at 976-977. As in Banks, "[n]othing in the

[testimony] would shock the average juror or otherwise render the jury incapable of weighing the evidence in a disinterested manner," and "given the relevance of the evidence to the question of motive, we cannot say that any prejudice it might have caused outweighed its significant probative value." Id. at 977.

(c) Finally, we must decide whether the State offered sufficient proof for the jury to conclude that Appellant committed the acts described by Tucker. Tucker testified that she spent considerable time in the marital residence with Appellant and Sarah – summers and weekends – and that she witnessed the acts about which she testified; this was sufficient. See United States v. Lail, 846 F2d 1299, 1302, n. 3 (1988) (eyewitness testimony sufficient proof that defendant committed extrinsic acts under Rule 404 (b)). Accordingly, the trial court did not abuse its discretion when it permitted the State to present Tucker's testimony.

3. The trial court also granted the State's request to admit various hearsay testimony and evidence under OCGA § 24-8-807 ("Rule 807"), the new residual hearsay provision. Namely, the trial court admitted the following: testimony from Maranda Self that, on the evening before Lauren's death, Self brought

alcohol to Lauren at the marital residence, that she was told by Lauren that Appellant had slashed a tire on Lauren's truck, and that Lauren was anxious for Self to leave the residence before Appellant returned; testimony from April Solomon that, approximately seven months before the murder, Lauren reported that Appellant had beaten her with a suitcase when she announced her intention to leave the marriage; Facebook messages exchanged between Appellant and Lauren (who was pretending to be someone else) in which Appellant used the phrase "death before dishonor"; "letters to God," written by Lauren, in which she described her tumultuous and abusive relationship with her husband; and, numerous text messages sent by Lauren to various family and friends regarding her relationship with Appellant. Appellant contends that the evidence was improperly admitted.[4]

As an initial matter, our review of this claim is hampered by Appellant's failure to specify which evidence he contends was wrongfully admitted and, if

---

[4] Appellant also suggests that the admission of this evidence violated his right to confrontation; this argument, however, was not raised below and none of the statements were testimonial. See Davis v. Washington, 547 U. S. 813, 822 (126 SCt 2266, 165 LE2d 224) (2006) (statements are testimonial when the primary purpose is to establish past events potentially relevant to later criminal prosecution).

he takes issue with all of the evidence, his failure to engage in legal analysis with respect to each piece of evidence he is challenging. "It is not this Court's job to cull the record on behalf of [Appellant] to find alleged errors." (Citations omitted.) Maxwell v. State, 290 Ga. 574, 575(2) (722 SE2d 763) (2012). While Appellant apparently seeks to challenge the admissibility of all the evidence admitted under Rule 807, we agree with the State that Appellant's arguments are not preserved for appellate review.[5] Accordingly, we review this claim for plain error. See OCGA § 24-1-103 (d); Gates v. State, 298 Ga. 324 (3) (781 SE2d 772) (2016).

In State v. Kelly, 290 Ga. 29 (718 SE2d 232) (2011), this Court adopted the federal plain-error standard as set out in Puckett v. United States, 556 U. S. 129 (II) (a) (129 SCt 1423, 173 LEd2d 266) (2009), which involves the following four prongs:

---

[5] Prior to trial, the State filed a notice of intent to introduce hearsay evidence under Rule 807; Appellant filed a written objection and argued against the admission of that evidence at a subsequent hearing. Later, the State filed a supplement to its original notice, adding text messages that Lauren had sent to various friends and family. While Appellant objected to other evidence that the State sought to admit under Rule 807, there was no pre-trial or contemporaneous objection with respect to the text-message evidence. With respect to the remaining evidence, Appellant's arguments in this Court are not the same that Appellant made pre-trial. Our review is now limited to plain error.

First, there must be an error or defect – some sort of "[d]eviation from a legal rule" – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the [trial] court proceedings." Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the *discretion* to remedy the error – discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Emphasis in original.) Kelly, 290 Ga. at 33. See also Gates, 298 Ga. at 327 (recognizing that the test adopted in Kelly applies to rulings on evidence). Accordingly, beyond showing a clear or obvious error, "plain-error analysis . . . requires the appellant to make an affirmative showing that the error probably did affect the outcome below." (Citation and punctuation omitted.) Shaw v. State, 292 Ga. 871, 873(2) (742 SE2d 707) (2013). "Reversal is authorized only if all four prongs are satisfied—a 'difficult' standard indeed." Carruth v. State, 290 Ga. 342, 348 (6) (721 SE2d 80) (2012).

The relevant portion of Rule 807 states as follows:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that:

13

> (1) The statement is offered as evidence of a material fact;
>
> (2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
>
> (3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

OCGA § 24-8-807. The residual hearsay exception was designed "'to be used very rarely, and only in exceptional circumstances.'" (Citations omitted.) Rivers v. United States, 777 F3d 1306, 1312 (II) (11th Cir. 2015). The rule applies "'only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.'" Id.

> [S]uch guarantees must be "equivalent to cross-examined former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history." [Cit.] These categories of hearsay "have attributes of trustworthiness not possessed by the general run of hearsay statements that tip the balance in favor of introducing the information if the declarant is unavailable to testify." [Cit.] And they are all considered sufficiently trustworthy not because of the credibility of the witness reporting them in court, but because of the circumstances under which they were originally made. For example, a dying declaration is trustworthy enough to admit as evidence in certain types of cases because at the time the declaration is made, the declarant believes that she is about to die and the statement concerns the cause of her death—in other words, because

14

of the particular circumstances surrounding the original utterance of the statement.

(Citations omitted.)  Rivers, 777 F3d at 1314.

While Appellant argues that Lauren's statements lacked the "exceptional guarantees of trustworthiness" required to be admissible under Rule 807, any error in admitting those statements is neither clear nor obvious.  We cannot say that statements from a wife to her friends or family, or her own writings, which describe acts of domestic violence, do not, in fact, bear an increased level of trustworthiness.  Likewise, in light of the often-secretive nature of domestic violence, we can also envision that such statements might be highly probative. Moreover, Appellant has failed to demonstrate that the admission of this evidence affected his substantial rights.  As noted above, Appellant does not speak to, much less analyze, the entirety of the evidence admitted under this rule.  Though the Rule 807 evidence admitted at trial clearly painted a picture that Appellant was violent and controlling, the jury had already heard other evidence establishing this, namely: that Lauren was seen with extensive injuries and that Appellant had made threatening statements about Lauren.

Further,  the State's case was incredibly strong.  The undisputed evidence

15

below established that: Lauren was beaten to death in her master bedroom; in two different statements, Appellant admitted to being in the same room with his wife at the time of her death and gave inconsistent accounts of what happened on the night of the murder; Appellant was overheard threatening his wife on the day before her murder; there was no evidence of forced entry into the house on the night of the incident; shoe prints on Lauren's body very clearly matched the soles of shoes belonging to Appellant; and, the jury heard testimony that Lauren's son heard Appellant punching his mother on the night of her death. Reviewing the record as a whole we cannot say that any error here "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Kelly, supra. Accordingly, there is no plain error.

4. Appellant argues that the trial court committed reversible error by telling potential jurors that Appellant was "charged with the . . . murder of Lauren Brown Smart, his wife." According to Appellant, Lauren's status as Appellant's wife was an essential and disputed element that the State was required to prove with respect to the each of the family violence counts. There is no error.

At the time of Appellant's trial, OCGA § 17-8-57 provided, in relevant

part, that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[6]  However, OCGA § 17-8-57 "is violated only when [a] trial court's instruction, considered as a whole, 'assumes certain things as facts and intimates to the jury what the judge believes the evidence to be.'" (Citations omitted.) Parker v. State, 276 Ga. 598, 600 (5) (581 SE2d 7) (2003).  Here, the record is clear that the judge was not commenting on the evidence but, instead, was merely explaining the nature of the case during voir dire to help potential jurors determine whether they had been exposed to the extensive media coverage; the trial court's statement here was akin to referencing allegations in an indictment and "in no way constituted the type of direct comment on the substance or weight of the evidence that we have held to violate OCGA § 17-8-57." Dailey v. State, 297 Ga. 442, 443 (2) (774 SE2d 672) (2015).  See Lindsey v. State, 295 Ga. 343 (2) (760 SE2d 170) (2014) (trial court's preliminary instructions to venire explaining allegations in indictment did not violate OCGA § 17-8-57).  Compare Murphy v. State, 290

---

[6] This code section was amended subsequent to Appellant's trial.

17

Ga. 459, 460-461 (2) (722 SE2d 51) (2012) (trial judge's comments that witness was a "good detective" and that through "his good efforts we're going to find the truth of the matter" violated OCGA § 17-8-57).

5. Finally, Appellant claims that both his trial counsel and first appellate counsel were ineffective. The record shows that, while a claim of ineffective assistance of trial counsel was asserted in Appellant's initial motion for new trial, first appellate counsel later withdrew that claim in an amended motion and did not pursue it further. Accordingly, Appellant's claim that trial counsel was ineffective is now waived and cannot now be reasserted on appeal. See Williams v. Moody, 287 Ga. 665, 666 (697 SE2d 199) (2010) ("In order to avoid a waiver of a claim of ineffective assistance against trial counsel, the claim must be raised at the earliest practicable moment, and that moment is 'before appeal if the opportunity to do so is available.' The pre-appeal opportunity is 'available' when the convicted defendant is no longer represented by the attorney who represented him at trial." (citation omitted)). While Appellant also argues that first appellate counsel was ineffective for failing to pursue those claims, he is not entitled to a remand on that claim and must instead raise it in a habeas corpus proceeding. See Wilson v. State, 286 Ga. 141,

18

145 (686 SE2d 104) (2009) ("[The appellant] cannot resuscitate the procedurally barred claims of ineffective assistance of trial counsel by bootstrapping them to a claim of ineffectiveness of appellate counsel.").  See also Cowart v. State, 294 Ga. 333, 337, n. 6 (3) (751 SE2d 399) (2014).

Judgment affirmed.  All the Justices concur.