**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 9, 2019**

# In the Court of Appeals of Georgia

A19A1117. CHAMBERS v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Eric L. Chambers on one count of aggravated assault, one count of false imprisonment, and one count of battery. Chambers appeals his convictions, arguing that the trial court erred in admitting the victim's prior inconsistent statement and his own prior bad acts into evidence. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that in the early evening of October 25, 2016, a 911 dispatcher with the Athens-Clarke County Police Department received a call from a woman, later identified as S. P., who claimed that her fiancé—Chambers, with whom she resided—attacked her

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

after she confronted him about his drug use. Crying and obviously upset, S. P. explained that Chambers struck her in the face, tried to strangle her, and ultimately tied her to their bed to prevent her from leaving the home. S. P. begged the dispatcher to send an ambulance and expressed fear that Chambers was trying to get back into the house.

Shortly thereafter, a police officer arrived at S. P.'s residence and found her being treated in the back of an ambulance by EMTs, who arrived just a few minutes earlier. S. P. again stated that Chambers—who left the residence after the assault—had beaten her and tied her up with belts. And while the first officer continued questioning S. P., a forensics detective went inside the home and took photographs, which depicted the bedroom in disarray with broken glass and several belts laying on the floor and draped across the bed's footboard. Subsequently, both the officer and detective met a still visibly upset S. P. at the hospital, where the detective took photographs documenting her swollen face and eyes, abrasions on her neck, and significant carpet burns on her arms and legs.

Meanwhile, a sheriff's deputy—who had been alerted to the assault—spotted Chambers walking down the road less than a mile from the home and arrested him. But not long after Chambers's arrest, S. P. began contacting him via telephone and

visiting him in jail. During those interactions, all of which were recorded, Chambers sought to influence S. P. and discussed how she should testify about the incident. And a little over two weeks after Chambers's arrest, S. P. submitted a handwritten affidavit, claiming that she falsely accused him of attacking her.

Nevertheless, the State charged Chambers, via indictment, with one count of aggravated assault, one count of false imprisonment, and one count of battery. And not long afterward, the State filed a notice of its intent to introduce evidence of Chambers's prior act of family violence battery in 2003 under OCGA § 24-4-404 (b). Around this same time, the State also filed a motion to admit S. P.'s prior out-of-court statements to law enforcement, arguing that they were necessary because she would not testify against Chambers at his upcoming probation-revocation hearing.

The case proceeded to trial, and just before the start of jury selection, Chambers successfully moved the trial court to allow him to proceed *pro se*. Then, following jury selection, the trial court heard argument regarding the admissibility of Chambers's 2003 guilty plea to family violence battery against a former girlfriend with whom he resided at the time. At the conclusion of the argument, the trial court ruled that the evidence was admissible to prove motive and intent under OCGA § 24-

4-404 (b) and that its probative value was not substantially outweighed by its prejudicial effect.

Subsequently, the State presented its case, during which the 911 dispatch officer and the forensics detective testified, with the latter discussing the photographs he took of the scene and S. P.'s injuries. S. P. also testified. And although she admitted calling 911 on October 25, 2016, she denied that Chambers physically abused her. S. P. further testified that she did not remember anything from that night because she had been drinking and not taking her blood-pressure medication. Additionally, S. P. denied any recollection of a 2012 incident, in which Chambers struck her in the face. The State then presented the testimony of the law-enforcement officer who responded to a battery-in-progress call at S. P.'s residence, who stated S. P. claimed Chambers punched her and that he noticed injuries to her face.

The State also presented testimony from the police officer who initially responded to the October 25, 2016 assault and played a video of his interview of S. P., which was recorded via the officer's body camera. Subsequently, after the trial court provided the jury with a limiting instruction, the State presented a former law-enforcement officer, who testified that, on May 4, 2003, he was dispatched to a residence Chambers shared with his then-girlfriend to investigate a domestic-violence

4

report. The officer explained that, on his way to the residence, he encountered Chambers at a nearby convenience store, and he admitted that he and his girlfriend had an argument about child care, culminating in her hitting him in the head with scissor handles. Chambers then confessed that he "lost it" and "beat the f*** out of her." Later, the officer met with the victim, who indeed had swelling to her face and one of her eyes.

Finally, the State presented expert testimony from a licensed social worker, who specialized in domestic-violence prevention. Specifically, she explained that abusers commonly use violence to exert control over their victims and that the victims of abusive relationships often have difficulty ending the relationship and will frequently recant reports of violence. Thereafter, the State rested its case, and at the conclusion of the trial, the jury convicted Chambers on all three counts in the indictment. This appeal follows.[2]

1. Chambers contends that the trial court erred in admitting into evidence the victim's prior inconsistent statements to law-enforcement officers. Specifically, he

---

[2] Although Chambers has not challenged the sufficiency of the evidence, we have reviewed the record and find the evidence sufficient to enable a jury to conclude beyond a reasonable doubt that he was guilty of all the crimes of which he was convicted. *See Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

argues that S. P.'s statements claiming he attacked her, which were recorded by the police officer's body camera, constituted inadmissible hearsay not subject to any exception. We disagree.

Under OCGA § 24-6-613 (b), extrinsic evidence of a witness's prior inconsistent statement may be admitted so long as "the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require."[3] And under OCGA § 24-8-801 (d) (1) (A),

> [a]n out-of-court statement shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a prior inconsistent statement or a prior consistent statement under Code Section 24-6-613 or is otherwise admissible under this chapter.

---

[3] OCGA § 24-6-613 (b); *accord Brewner v. State*, 302 Ga. 6, 16-17 (V) (804 SE2d 94) (2017); *see also* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE p. 347 (6th ed. 2018).

6

These evidentiary rules "retain Georgia's former approach to a testifying witness's out-of-court statements."[4] Specifically, such statements are not hearsay, and, thus, they "may be admitted for both impeachment purposes and as substantive evidence."[5]

In this matter, when asked about Chambers's attack on her, S. P. testified that she did not recall any of the events of the night in question, claiming that her drinking and failure to take medications on the night in question contributed to her lack of recall. Ultimately, she testified that Chambers had not been violent toward her. The State then called the police officer who initially responded to the scene as a witness

---

[4] *McNair v. State*, 330 Ga. App. 478, 482 (1) (a) (767 SE2d 290) (2014) (punctuation omitted); *accord Robbins v. State*, 300 Ga. 387, 391 (2) (793 SE2d 62) (2016); *see also* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE p. 353 (6th ed. 2018) (noting that prior Georgia law similarly required a demonstration of inconsistency when using a prior statement to contradict the witness).

[5] *McNair*, 330 Ga. App. at 482 (1) (a) (citation and punctuation omitted); *see Robbins*, 300 Ga. at 391 (2) (holding that witness's prior inconsistent statement could be used as substantive evidence and for impeachment purposes); *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982) ("[A] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes."); *see also* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE p. 354 (6th ed. 2018) (noting that when the Georgia General Assembly enacted OCGA § 24-6-613 (b) it made prior inconsistent statements substantive).

and played a video of him questioning S. P., which was recorded by his body camera and in which S. P. stated that Chambers punched and choked her.

Chambers contends that the admission of the body camera video recording failed to meet the requirements of OCGA § 24-6-613 (b), arguing that because S. P. claimed that she could not recall the details of the night in question, she was not actually subject to cross examination as the rule requires. But Georgia's appellate courts have held that "[t]he failure of a witness to remember making a statement may provide the foundation for offering extrinsic evidence to prove that the statement was made."[6] And here, the foundation was laid for admission of S. P.'s prior statements to the responding officer when she gave testimony inconsistent with those statements, was confronted with that fact, and claimed not to recall them. Accordingly, the trial court did not err in admitting such statements.[7]

---

[6] *Brewner*, 302 Ga. at 17 (V); *see Hood v. State*, 299 Ga. 95, 99 (2) (786 SE2d 648) (2016) ("The failure of a witness to remember making a statement, like the witness's flat denial of the statement, may provide the foundation for calling another witness to prove that the statement was made."); *McNair*, 330 Ga. App. at 482 (1) (a) (holding that evidence of a witness's claim at trial that he could not recall speaking with the police laid the foundation for admission of the witness's prior inconsistent statement).

[7] *See Parks v. State*, 302 Ga. 345, 348 n.3 (806 SE2d 529) (2017) (concluding that given witness's trial testimony that she could not recall what she said to detective and stated her memory could not be refreshed upon being shown the statement she

2. Chambers also contends that the trial court erred in admitting evidence of his prior conviction for family violence battery to show motive under OCGA § 24-4-404 (b). Again, we disagree.

OCGA § 24-4-404 (b) provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .[8]

And the Supreme Court of Georgia has adopted a three-part test by which we evaluate the admissibility of so-called "other acts" evidence: "(1) the evidence must be

made, witness's prior inconsistent statement in which she claimed defendant admitted to murder was admissible) *Brewner*, 302 Ga. at 17 (V) (holding that video recordings of detective's interview with defendant's girlfriend were admissible as extrinsic evidence of girlfriend's prior statements that were inconsistent with trial testimony, in which girlfriend claimed defendant's involvement in home invasion plot was limited to introducing perpetrators and claimed not to recall telling detective otherwise); *McNair*, 330 Ga. App. at 482 (1) (a) (holding that witness's trial testimony that he could not recall speaking to officers about his car being rented to defendant's accomplice provided the foundation for the admission of the witness's prior inconsistent statements to officers regarding the car used in armed robbery).

[8] *See also Smart v. State*, 299 Ga. 414, 417 (2) (788 SE2d 442) (2016) (quoting OCGA § 24-4-404 (b)); Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE p. 137 (6th ed. 2018)

relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act."[9] As to the first factor, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[10] As to the second factor, even if Rule 404 (b) evidence is relevant, we must still decide whether "the

---

[9] *Smart*, 299 Ga. at 417 (2) (punctuation omitted) (quoting *United States v. Ellisor*, 522 F3d 1255, 1267 (II) (A) (11th Cir. 2008)); *accord McWilliams v. State*, 304 Ga. 502, 509 (3) (820 SE2d 33) (2018); *see State v. Jones*, 297 Ga. 156, 158-59 (1) (773 SE2d 170) (2015) (holding that under Rule 404 (b) the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character, (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question); *see also* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE p. 163 (6th ed. 2018) (citing three-part test for admission of Rule 404 (b) evidence).

[10] OCGA § 24-4-401; *accord Smart*, 299 Ga. at 418 (2) (a); *see Jones*, 297 Ga. at 162-63 (2) (noting that evidence is relevant if the State articulates a clear hypothesis showing that the evidence offered has any tendency to prove or disprove the existence of any consequential fact independent of the use forbidden by Rule 404 (b)); *see also* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE p. 162 (6th ed. 2018) (noting that Georgia courts have embraced the philosophical interpretation of the federal courts in finding that the relevance standard under Rule 404 (b) is a forgiving one).

probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403."[11] Importantly, application of the Rule 403 balancing test is "a matter committed principally to the discretion of the trial courts," but as we have explained before, "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly."[12] Indeed, this Court reviews the admission of Rule 404 (b) evidence for "a clear abuse of discretion," a deferential review requiring us to make "a common sense assessment of all the circumstances surrounding the extrinsic offense, including

---

[11] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted); *accord State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015); *see also* OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 96 (5th ed. 2016) ("Under Rule 403, the term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. The prejudice referenced in Rule 403 addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." (footnote omitted)).

[12] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted); *Dimauro v. State*, 341 Ga. App. 710, 713 (1) (801 SE2d 558) (2017); *Morris v. State*, 340 Ga. App. 295, 306 (4) (797 SE2d 207) (2017).

prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[13]

Here, before jury selection, the State argued for the admission of Chambers's 2003 conviction of family violence battery against his then-girlfriend, and the trial court ruled that the evidence was admissible to show motive. And just prior to the introduction of the evidence, the trial court provided the jury with a limiting instruction, explaining that the State was offering evidence of Chambers's other acts to prove motive and that the jury was permitted "to consider [the] evidence only insofar as it may relate to the issue of motive and not for any other purpose." Immediately thereafter, the police officer who responded to the 2003 incident recounted Chambers's admission that he struck his girlfriend and his own observation of the girlfriend's injuries.

---

[13] *Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016) (punctuation omitted); *accord Morris*, 340 Ga. App. at 306-07 (4); *Graham v. State*, 337 Ga. App. 664, 669 (2) (788 SE2d 555) (2016); *see* CARLSON, supra note 7, p. 130 ("Evaluating the balance between probativity and prejudice under Rule 403 calls for a commonsense assessment of all the circumstances surrounding the other act, including [the] proponent's need for the [Rule 404 (b)] evidence, the overall similarity between the extrinsic evidence and the offense at issue, and the temporal proximity of the two.").

On appeal, Chambers contends that the trial court erred in admitting evidence of his 2003 family violence battery conviction, arguing that the State failed to show a common motive between that prior conduct and the charges relating to his attack upon S. P. This argument is a nonstarter.

As the Supreme Court of Georgia has explained, "[m]otive has been defined as the reason that nudges the will and prods the mind to indulge the criminal intent."[14] And while motive is not an element of any of the charged offenses, the testimony of the police officer who responded to the 2003 family violence battery incident was relevant to help the jury understand why Chambers used violence against S. P. Indeed, the officer explained that Chambers admitted to the battery of his former girlfriend but claimed he did so after she confronted him about a child-care issue and allegedly struck him with the handle of a pair of scissors. Thus, the officer's testimony revealed that the impetus behind the violence was control, or more specifically, reasserting control after being challenged by his girlfriend. Relatedly, the State's expert testified that many domestic-violence situations involve the male partner trying to maintain power or control over his female partner. And as the State

---

[14] *Smart*, 299 Ga. at 418 (2) (a) (punctuation omitted); *accord Harris v. State*, 338 Ga. App. 778, 781 (792 SE2d 409) (2016).

summarized in closing argument, Chambers used violence to assert his control over

S. P. when she confronted him about his drug use. Given these circumstances, the

police officer's testimony was relevant to the State demonstrating motive, *i.e.*, that

Chambers used violence to assert control when his authority was questioned.[15]

Chambers further argues that the evidence of his 2003 family violence battery

was inadmissible because the trial court failed to weigh its prejudicial impact against

_____

[15] *See Smart*, 299 Ga. at 418 (2) (a) (holding that testimony of sister of defendant's ex-wife regarding prior acts of domestic violence committed by defendant against ex-wife, in murder prosecution premised on beating death of defendant's current wife, was admissible under Rule 404 (b) as such testimony was relevant to addressing motive, namely that defendant used violence to control victim); *Olds v. State*, 340 Ga. App. 401, 404-05 (1) (b) (797 SE2d 661) (2017) (finding that other acts evidence was admissible under Rule 404 (b) to show motive when both prior acts and attack for which defendant was being tried showed that defendant committed violent sexual assault when told by victims they would not resume a romantic relationship); *Harris*, 338 Ga. App. at 412-13 (concluding that other acts evidence of defendant's prior convictions for family violence battery was relevant to show motive under Rule 404 (b) in prosecution for family violence battery because other acts evidence showed defendant's willingness to use violence against female victims whom he knew in an attempt to intimidate when they did not accede to his demands as he did against the victim in his current case). *Cf. Brooks v. State*, 298 Ga. 722, 726-27 (2) (783 SE2d 895) (2016) (holding that evidence of prior murder was not admissible to show motive under Rule 404 (b) because prior murder of law enforcement officer during a prison break was not logically relevant to the murder of a security guard during a theft); *Amey v. State*, 331 Ga. App. 244, 250-51 (1) (b) (770 SE2d 321) (2015) (holding that defendant's prior robbery was not admissible to show impecuniousness as motive for current robbery as State failed to show that defendant had a specific need for money at the time of the prior robbery).

14

its probative value. But this argument is belied by the record. In fact, at the conclusion of the argument regarding the admissibility of the 2003 conviction, the trial court explicitly stated that the probative value of the evidence was not substantially outweighed by its prejudicial effect. And based on our review, the trial court did not err in so finding.

To determine whether relevant evidence is more probative than prejudicial, our Supreme Court has explained that, generally speaking, "the greater the tendency to make the existence of a fact more or less probable, the greater the probative value."[16] And it is worth reiterating that "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly."[17] Importantly, the major function of Rule 403 is to "exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."[18] Furthermore, the extent to which evidence tends to make the existence of a fact more or less probable

> depends significantly on the quality of the evidence and the strength of
> its logical connection to the fact for which it is offered; how much it

---

[16] *Harris*, 338 Ga. App. at 782 (punctuation omitted) (quoting *Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016)).

[17] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted).

[18] *Id.* (punctuation omitted).

adds . . . to the other proof available to establish the fact for which it is offered; and the need for the evidence.[19]

Here, photographs of S. P. following the attack left no doubt that she suffered injuries; and in her initial statements to the 911 dispatcher and the first responding police officer, she claimed Chambers perpetrated the attack. But these statements were at least somewhat called into question by S. P.'s recantation in her affidavit, in which she claimed that she falsely accused Chambers, and her lack of recall on the witness stand. Thus, the prior-acts evidence showing that Chambers resorted to violence to assert control over his female partners was needed by the State to counter S. P.'s reluctance to testify against Chambers. Indeed, such evidence added significantly to the other evidence submitted to show that Chambers, in fact, struck and choked S. P.[20] And while the evidence was certainly prejudicial, as almost all

---

[19] *Harris*, 338 Ga. App. at 782 (punctuation omitted) (quoting *Olds*, 299 Ga. at 75-76 (2)).

[20] *See Olds*, 340 Ga. App. at 405-06 (2) (holding that prior acts evidence showing that defendant had committed violent acts against women with whom he had been romantically involved helped establish proof of guilt in case in which there was little evidence other than victim's testimony); *Harris*, 338 Ga. App. at 783 (concluding that prior acts evidence that defendant had engaged in violence towards other women who refused to accede to his advances added to proof used to establish he hit victim after she similarly refused).

evidence presented by the State against a criminal defendant will be, we agree with the trial court that "on balance any such prejudice did not substantially outweigh the probative value of the evidence in this case."[21] Accordingly, the trial court did not abuse its discretion in admitting Chambers's 2003 family violence battery conviction into evidence.

For all these reasons, we affirm Chambers's convictions.

*Judgment affirmed. Gobeil and Hodges, JJ., concur*.

---

[21] *Harris*, 338 Ga. App. at 783 (punctuation omitted); *see Smart*, 299 Ga. at 419 (2) (b) (holding that "given the relevance of the evidence to the question of motive, we cannot say that any prejudice it might have caused outweighed its significant probative value").