**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 9, 2020**

# In the Court of Appeals of Georgia

A20A0703. SHERROD v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Ladarius Sherrod of one count of aggravated assault and one count of reckless conduct. On appeal, Sherrod challenges the sufficiency of the evidence supporting his convictions and further argues that the trial court erred in admitting evidence of prior difficulties and his bad character. Nevertheless, for the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on the afternoon of April 26, 2015, Sherrod and Lavonte Steele—who had known each other since childhood—were playing basketball at a local park with several other people. At some point, the trash-talking that often takes in place in pickup games

---

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

started up between Sherrod and some of the other people playing, and eventually escalated into a heated argument. Boiling with rage, Sherrod stormed off the court, got into his vehicle, and drove away. But a few minutes later, Sherrod returned, driving his vehicle right up to the court before parking. Then, upon exiting his car, Sherrod brandished a handgun, pointed it at Steele, and then fired a few shots into the air before getting back into his vehicle, firing more shots, and driving off again. And although one witness to the incident called the police, Sherrod was not arrested at that time.

Less than one week later, on the evening of May 3, 2015, Steele, a few friends, and several of his cousins were hanging out in front of a local pool hall called Fat Man's Lounge. A short time later, Sherrod arrived, and he and Steele resumed their argument from the previous week. Suddenly, Sherrod drew his handgun and began firing at Steele, who ran toward some parked cars to take cover. As the people crowding the street scattered in panic, Sherrod aimed his weapon at John Lockett, Steele's cousin, and started firing again. Immediately, Lockett ducked behind his vehicle, drew his own handgun, and returned fire. Sherrod then jumped into his vehicle and fled the scene. Meanwhile, Steele realized that he had been shot in the lower back and sought aid from another one of his cousins, who drove him to the

hospital. By that time, a local resident who heard the shots called the police, who arrived shortly thereafter.

The State charged Sherrod, via indictment, with one count of aggravated assault upon Steele, related to the incident outside the pool hall; one count of aggravated assault upon Lockett, related to that same incident; and one count of aggravated assault upon Steele, related to the incident at the basketball court. The case then proceeded to trial, during which the State presented the foregoing evidence. In addition, the State presented evidence, via testimony from several witnesses, of a prior difficulty between Sherrod and Steele. In that incident, which occurred in January 2012, Steele attended a cookout at the home of one of his cousins, who lived down the street from where Sherrod resided. After the cookout, Steele and a few friends got into an SUV to leave and then drove by Sherrod's residence, where he and a number of people were gathered. As Steele and his friends drove by Sherrod's residence, someone in Sherrod's group threw something that hit the vehicle. The SUV driver immediately stopped the vehicle; at which point, Sherrod and possibly others fired several gunshots at the SUV before it sped away. And although the police investigated the incident, they made no arrests.

After the State rested, Sherrod presented several witnesses in his defense. Nevertheless, at the conclusion of the trial, the jury found Sherrod guilty of the aggravated assault upon Steele outside the pool hall; not guilty of the aggravated assault upon Lockett that same night; and guilty of reckless conduct as a lesser-included offense of aggravated assault with regard to the incident at the basketball court. Thereafter, Sherrod obtained new counsel and filed a motion for new trial. Ultimately, the trial court denied Sherrod's motion. This appeal follows.

1. In his first enumeration of error, Sherrod contends that the evidence was insufficient to support his convictions. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] And, of course, in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses

---

[2] *See Anderson v. State*, 350 Ga. App. 369, 372 (829 SE2d 453) (2019) (noting that following conviction, an appellant no longer enjoys a presumption of innocence and appellate courts view the evidence in the light most favorable to the verdict).

beyond a reasonable doubt."[3] Thus, the jury's verdict will be upheld so long as "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] With these guiding principles in mind, we turn to Sherrod's challenge to the sufficiency of the evidence supporting his convictions.

As previously noted, the State charged Sherrod with the aggravated assault on Steele outside of the pool hall under OCGA § 16-5-21 (b) (2), which at the time provided that "[a] person commits the offense of aggravated assault when he or she assaults [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[5] Accordingly, Count 1 of the indictment charged Sherrod with aggravated assault by alleging that he made "an assault upon the person of Lavonte Steele with a deadly weapon, to wit: a handgun, by shooting him. . . ." Count 3 of the

---

[3] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury have found the essential elements of the crime beyond a reasonable doubt).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

[5] *See* OCGA § 16-5-21 (b) (2) (2014).

indictment also charged Sherrod with aggravated assault, alleging that he "made an assault upon Lavonte Steele, by discharging, without legal justification, a firearm from within a motor vehicle toward the direction of said person. . . ." And reckless conduct, which is a lesser-included offense of aggravated assault,[6] is defined under OCGA § 16-5-60 (b) as

> when [a] person causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act . . . will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

In this matter, the State presented evidence that Sherrod fired several shots at Steele outside of the pool hall and that one of those shots struck Steele in the back. And while Sherrod argues that the credible evidence indicates Lockett was the only

---

[6] *See State v. Springer*, 297 Ga. 376, 380 (1) (774 SE2d 106) (2015) (noting that reckless conduct is a lesser-included offense of aggravated assault); *Chambers v. State*, 308 Ga. App. 748, 752 (2) (708 SE2d 651) (2011) (holding that reckless conduct can be deemed a lesser-included offense of aggravated assault); *Bowers v. State*, 177 Ga. App. 36, 38 (1) (338 SE2d 457) (1985) (holding that "as to an indictment for the commission of an aggravated assault with a deadly weapon based upon allegations that the victim was actually shot, a verdict of guilty of the crime of reckless conduct may be returned thereon. . . .").

person firing a gun during this incident, "[i]t was the role of the jury, not this Court, to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence."[7] So, here, the jury obviously chose to believe the several witnesses, including Steele, who testified that Sherrod brandished a handgun and fired it at Steele. Given these circumstances, the evidence was sufficient to support Sherrod's conviction of aggravated assault.[8] Furthermore, the State also presented evidence that following an argument on the basketball court at a local park, Sherrod aimed a handgun at Steele and then fired shots into the air as he was driving away. Thus, the evidence was also sufficient to support Sherrod's conviction of reckless conduct as a lesser-included offense of aggravated assault.[9]

---

[7] *Lomax v. State*, 319 Ga. App. 693, 694 (1) (738 SE2d 152) (2013) (punctuation omitted).

[8] *See Green v. State*, 304 Ga. 385, 388 (1) (a) (818 SE2d 535) (2018) (affirming defendant's aggravated-assault conviction given evidence that defendant fired handgun in the direction of four people); *Lomax*, 319 Ga. App. at 694 (1) (holding that victim's testimony alone that defendant started firing a gun at him and that victim ran but a moment later realized he was shot was sufficient to support aggravated-assault conviction); *Jones*, 318 Ga. App. at 29 (1) (a) (holding that evidence showing that defendant fired shots into a crowd of people, wounding two, was sufficient to support his conviction of aggravated assault).

[9] *See Baker v. State*, 273 Ga. App. 297, 300 (2) (614 SE2d 904) (2005) (holding evidence showing that defendant pulled a gun from trunk of a car and started firing toward several people was sufficient to support reckless-conduct conviction);

2. Sherrod also contends that the trial court erred in admitting evidence of a prior difficulty he had with Steele. Again, we disagree.

The admissibility of prior difficulty evidence is properly decided under OCGA § 24-4-404 (b),[10] which provides:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. *Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances*

---

*McDonald v. State*, 224 Ga. App. 411, 412 (481 SE2d 1) (1997) (concluding that evidence showing defendant fired gun near victim's head was sufficient to support conviction of reckless conduct).

[10] *See Flowers v. State*, 307 Ga. 618, 620 (2) (837 SE2d 824) (2020) (noting that the admissibility of prior difficulties evidence is governed by OCGA § 24-4-404 (b)); *see also* Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence, p. 549 (6th ed. 2018) (noting that "the adoption of O.C.G.A. § 24-4-404 (b) provides Georgia with a statutory framework for the admission of other acts evidence for non-character purposes.").

8

*immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.*[11]

And for evidence of other acts, including prior difficulties, to be admissible, the trial court must find that:

> (1) the other acts evidence is relevant to an issue other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ("Rule 403"), and (3) there is sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed the acts.[12]

Importantly, evidence of a defendant's prior acts toward another person may be admissible when "the defendant is accused of a criminal act against that person, where the nature of the relationship between the defendant and the victim sheds light on the defendant's motive in committing the offense charged in the prosecution at

---

[11] (Emphasis supplied).

[12] *Flowers*, 307 Ga. at 621 (2) (punctuation omitted); *accord State v. Atkins*, 304 Ga. 413, 416 (2) (819 SE2d 28) (2018).

9

issue."[13] And a trial court's decision to admit other-acts evidence "will be overturned only where there is a clear abuse of discretion."[14]

In this matter, during the trial, the State presented evidence of an incident between Sherrod and Steele that occurred in January 2012. Specifically, witnesses testified that Steele and others attended a cookout at Steele's cousin's home. Then, when the cookout was over, and Steele and some others left the gathering, they drove by Sherrod's residence, which was on the same street. As they did, Sherrod and some of his friends first threw something and then fired shots at the SUV in which Steele was riding.

Sherrod never objected to this evidence and, in fact, apparently acquiesced to it, cross-examining the witnesses, including Steele, who testified about the incident. Nevertheless, under the "new" Evidence Code, the rulings related to this evidence are

---

[13] *Flowers*, 307 Ga. at 621 (2); *see Smart v. State*, 299 Ga. 414, 417-18 (2) (a) (788 SE2d 442) (2016) (holding that evidence regarding prior acts of domestic violence by defendant against victim was admissible under Rule 404 (b) to show defendant's motive); *Anthony v. State*, 298 Ga. 827, 832 (4) (785 SE2d 277) (2016) (same); *see also* Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 171 (6th ed. 2018) (noting that Georgia law with regard to prior difficulties is consistent with federal and other state authority classifying such as evidence as "intrinsic").

[14] *Flowers*, 307 Ga. at 621 (2) (punctuation omitted); *accord State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015).

"subject to review on appeal for plain error affecting substantial rights."[15] In this regard, the Supreme Court of Georgia has adopted the federal plain-error standard of review, as articulated by the Supreme Court of the United States in *Puckett v. United States*.[16] And under this four-pronged test,

> there [first] must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[17]

---

[15] *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016) (punctuation omitted); *see* OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.").

[16] 556 U.S. 129 (129 SCt 1423, 173 LE2d 266) (2009); *see Gates*, 298 Ga. at 326 (3) (noting that the Supreme Court of Georgia has adopted the four-pronged plain-error standard as set forth in *Puckett*).

[17] *Gates*, 298 Ga. at 327 (3) (punctuation omitted), quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); *see Puckett*, 556 U.S. at 135 (II).

But here, Sherrod cannot show that the trial court erred in admitting this evidence of prior difficulties, much less that it plainly erred in doing so. Indeed, the January 2012 incident demonstrated the lengthy history of the animosity between Sherrod and Steele and, therefore, shed further light on what may have motivated Sherrod to commit the two shootings in 2015.[18] Moreover, given that the evidence did not show merely that Sherrod engaged in a previous criminal act but, instead, demonstrated the nature of the relationship between him and Steele, "we cannot say that any prejudice it might have caused outweighed its significant probative value."[19] Accordingly, the trial court did not plainly err in admitting the evidence of prior difficulties between Sherrod and Steele.

---

[18] *See Flowers*, Slip op. at 8-9 (2) (holding that evidence of prior difficulty between defendant and murder victim was relevant to the issue of motive, as it shed light on the nature of the parties' relationship, and, thus, was admissible); *Smart v. State*, 299 Ga. at 417-18 (2) (a) (holding that evidence regarding prior acts of domestic violence by defendant against victim was admissible under Rule 404 (b) to show defendant's motive); *Anthony*, 298 Ga. at 832 (4) (same).

[19] *Flowers*, Slip op. at 11 (2) (punctuation omitted); *see Smart*, 299 Ga. at 419 (2) (b) (finding that while the evidence of prior difficulties between defendant and victim was disturbing, there was "nothing inherent in this evidence that would create a risk that [defendant] would be convicted on a ground different from proof specific to the offense charged" and, thus, its prejudice did not outweigh its probative value (punctuation omitted)); *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016) (noting that "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly" (punctuation omitted)).

3. Sherrod further argues that the trial court erred in admitting evidence of his bad character. Once again, we disagree.

During the presentation of his defense, Sherrod called one of his friends, who testified that he was at the basketball court on the day Sherrod and Steele got into their argument but did not see Sherrod in possession of a gun. Thereafter, in response to Sherrod's counsel's questioning, the friend further testified that Sherrod had previous altercations with Steele and other members of Steele's family. The prosecutor objected, arguing that the witness needed to testify about specific instances and not generalities. Subsequently, the friend recounted an incident when he and Sherrod were at a pool hall called Tick's. At some point during the evening, Steele and a few members of his family ganged up on Sherrod, who was forced to defend himself unarmed. On cross-examination, the prosecutor asked if the incident at Tick's to which the friend referred was the same night that Sherrod allegedly stabbed one of Steele's family members. And in response, the friend stated that he was "not sure."

Subsequently, Sherrod called as a witness a second friend, who testified that he was present on the night of the altercation at Fat Man's Lounge but he, similarly, did not see Sherrod in possession of a gun. On cross-examination, the prosecutor,

13

after questioning him about the incident at Fat Man's Lounge, asked if the friend had ever seen Sherrod with a gun, and he responded that he had not. The prosecutor then asked if he was aware of allegations of Sherrod "pulling guns on other people," and the friend answered in the affirmative.

Sherrod now argues that the foregoing references to the stabbing of one of Steele's relatives and "pulling guns on other people" constituted improper evidence of his bad character. But once again, Sherrod did not object to this line of questioning during trial, and thus, his contention is only subject to plain-error review on appeal.[20] That being said, despite Sherrod's contention, the issue is more properly characterized as impeachment by disproving a fact.[21] Indeed, with respect to Sherrod's friend testifying about the altercation with Steele and his relatives at Tick's, the prosecutor's inquiry as to whether this was the same altercation in which Sherrod stabbed one of Steele's relatives was warranted as an attempt to disprove that Sherrod

---

[20] *See supra* note 15.

[21] *See* OCGA § 24-6-621 ("A witness may be impeached by disproving the facts testified to by the witness."); *see also* Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 369 (6th ed. 2018) (noting OCGA § 24-6-621 has no counterpart in the Federal Rules of Evidence, but federal jurisprudence recognizes impeachment by contradiction and there is some consensus that OCGA § 24–6–621 may be read in conjunction with OCGA § 24-6-607).

14

was merely defending himself while unarmed. Similarly, in light of the second friend's testimony that he never saw Sherrod pull a gun on someone, the prosecutor was allowed to cast doubt on the friend's veracity by asking if he was aware of allegations that Sherrod engaged in such conduct. Given these circumstances, the trial court did not plainly err in allowing such testimony.[22] But even if we were to assume for the sake of argument that this evidence should not have been admitted, the error would not require reversal. Indeed, given the testimony from several eyewitnesses, including Steele, that Sherrod fired a gun at the basketball court and a week later did so outside of the pool hall, the evidence of Sherrod's guilt was overwhelming.[23]

---

[22] *See Parker v. State*, 339 Ga. App. 285, 289-90 (1) (793 SE2d 173) (2016) (holding that trial court did not abuse its discretion by allowing State to impeach defendant with evidence that he had previously been charged with aggravated assault, after defendant testified on direct examination that he had never "been in no situation like this"); *Harris v. State*, 333 Ga. App. 118, 121 (2) (775 SE2d 602) (2015) (concluding that trial court did not abuse its discretion in allowing defendant, who testified that he had never engaged in sexual relations with an underage girl, to be impeached to disprove that fact with evidence that he had in fact engaged in improper sexual contact with another minor girl); *Robinson v. State*, 332 Ga. App. 240, 244 (2) (771 SE2d 751) (2015) (holding that defendant could not seek to exclude further details concerning the same area of inquiry that he introduced because "[o]ne cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice").

[23] *Dennard v. State*, 305 Ga. 463, 466-67 (2) (826 SE2d 61) (2019) (holding that trial court's error, if any, in allowing the State to introduce evidence of defendant's prior felony convictions, without first finding the probative value of the

For all these reasons, we affirm Sherrod's convictions and the denial of his motion for new trial.

*Judgment affirmed. Rickman and Brown, JJ., concur.*

---

convictions outweighed their prejudicial effect, was harmless, given that evidence against defendant was overwhelming); *Stroud v. State*, 301 Ga. 807, 812 (2) (804 SE2d 418) (2017) (noting that "[t]he test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict" (citation and punctuation omitted)); *Belcher v. State*, 344 Ga. App. 729, 743-44 (2) (c) (812 SE2d 51) (2018) (noting that new Evidence Code continues Georgia's existing harmless-error doctrine for erroneous evidentiary rulings, and finding that given the overwhelming evidence that defendant committed the robbery, any error in admitting evidence was harmless).