304 Ga. 502
FINAL COPY

S18A0728. MCWILLIAMS v. THE STATE.

BENHAM, Justice.

Appellant Richard McWilliams seeks review of his convictions related to the beating death of his girlfriend Kathleen Baxter.[1] For the reasons set forth below, we affirm appellant's convictions.

1. The evidence construed in a light most favorable to upholding the jury's verdicts shows as follows. Appellant and the victim dated for

---

[1] The crimes occurred October 13-14, 2012. On May 13, 2014, a Fulton County grand jury indicted appellant on charges of malice murder, felony murder (false imprisonment), felony murder (aggravated assault), aggravated sexual battery, false imprisonment, and aggravated assault. Appellant was tried May 18-22, 2015, before a jury which returned a verdict of guilty on involuntary manslaughter as a lesser included offense of malice murder and returned verdicts of guilty on all remaining charges. On June 3, 2015, the trial court sentenced appellant to life in prison for felony murder (aggravated assault) and 25 years to serve consecutively for aggravated sexual battery. The second felony murder count (false imprisonment) was vacated as a matter of law, and the trial court purported to merge the remaining counts into the sentence for felony murder (aggravated assault). See Dixon v. State, 302 Ga. 691 (4) (808 SE2d 696) (2017) ("when a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances"). Appellant moved for a new trial on June 15, 2015, and amended the motion on April 4, 2016. The trial court held a hearing on August 9, 2016, and denied the motion as amended on November 29, 2017. Appellant filed a notice of appeal on December 14, 2017, and, upon receipt of the record, the case was docketed to the April 2018 term of this Court for a decision to be made on the briefs.

approximately five years leading up to her death. The victim confided in her daughter, as well as in a close friend, about abuse she suffered at the hands of appellant when he was drunk. At trial, both the daughter and the friend testified that Ms. Baxter told them that appellant would become verbally, physically, and sexually abusive toward her when he consumed alcohol. They testified that Ms. Baxter confided that when appellant drank, he would sometimes roughly force his fingers up Ms. Baxter's anus despite her begging him not to do so. Ms. Baxter kept journals and photographs documenting some of the abuse she suffered at the hands of appellant. On New Year's Day 2012, for example, appellant, who was drunk, punched Ms. Baxter in the face, breaking her nose, and also choked her. Ms. Baxter took photographs of her injuries and documented the event by posting on Facebook that same day. The photographs and a screenshot of the Facebook post were presented to the jury. In addition, Ms. Baxter had written a letter to appellant breaking up with him, complaining about, among other things, his drinking and his placing his finger "up [her] butt." Ms. Baxter had sent a blind copy of this letter to her close friend, who testified as to its authenticity, and the letter was published to the jury. A domestic violence expert testified that Ms. Baxter and appellant were

in a cycle of abuse which included a pattern of verbal abuse, physical abuse, separation and reconciliation.

In October 2012, Ms. Baxter and appellant had just reconciled and decided to go on a trip to downtown Atlanta. On October 13, 2012, the two checked into the Westin Peachtree Plaza Hotel where they were the only hotel guests on the 64th floor. After checking in, the two went to two nearby restaurants where they ate and consumed alcohol. The victim took several photos of her activities, posting them to social media so that her daughter and friend knew where she was. The last photo and posting she made was at 8:15 p.m. inside the hotel room.

The next day, a hotel housekeeping supervisor testified she called hotel security upon seeing a trail of blood and vomit leading from the guest elevators to the couple's room. Isaac Byrd, a hotel security officer, testified that when he arrived at the room, appellant told him Ms. Baxter had hit her face against the elevator door. Byrd stated that when appellant did not ask for help or assistance for Ms. Baxter, Byrd asked to see her. When Byrd and a few other hotel personnel entered the room, they noticed packed bags and a woman's purse on the dresser. Byrd testified that the bed was covered in blood and vomit. Byrd and other hotel personnel testified that Ms. Baxter was sitting

motionless on the floor, propped up against the bed. She had vomit in her hair and blood and vomit on her face, but her clothes were clean.[2] Ms. Baxter made some mumbling noises, but was unresponsive to any questions. Byrd testified he made the decision to have the hotel dispatcher call 911.[3] An ambulance took Ms. Baxter to Atlanta Medical Center. The hotel had the room cleaned before police became involved in the case on October 15, meaning there was no crime scene for the police to investigate. There was also no hotel video footage of the incident or witnesses to the incident other than appellant.

Several medical personnel testified about Ms. Baxter's condition while she was a patient in the intensive care unit from October 14-21, 2012. Nursing personnel testified the victim had bruising to her anus and a tear in her rectum. The nursing staff took photographs of these injuries and turned them over to police. In addition to suffering from trauma to her head and the injuries to her anus and rectum, a nurse testified Ms. Baxter had the imprint of a hand on her arm and a bruise on the left side of her neck. The neurosurgeon who treated Ms. Baxter testified that Ms. Baxter had lacerations and abrasions to her face

---

[2] Witnesses testified that appellant's clothes were also clean and that his hair was wet.

[3] Appellant told Ms. Baxter's daughter and one of the police investigators he called 911. No 911 calls were made from the hotel room.

and body; a "ligamental" strain "in" her neck; bleeding on both sides of her brain in the frontal lobe area; and trauma to the deep center of her brain which caused lesions. The neurosurgeon testified the injuries to Ms. Baxter's head caused increased "intracranial" pressure resulting in more damage to her brain, despite efforts to control the pressure. Eventually, Ms. Baxter's family members decided to withdraw her from life support, and she died on October 21.

Appellant did not testify at trial; however, he gave varying pretrial statements to different people as to how Ms. Baxter was injured, including two recorded statements to police that were played for the jury. For example, appellant told a hotel security officer that Ms. Baxter's injuries were from her face hitting the elevator door; but he also told the hotel's assistant director of housekeeping that the victim fell and hit her head on the trash receptacle near the elevator. A nurse testified that appellant said the victim was injured when elevator doors closed on her head. Appellant told police that he and Ms. Baxter were in their room when she decided to go back out. Because he did not want her to leave, he said he followed her down the hall and grabbed her by the arm. Appellant told police he and the victim were standing about four feet away from the guest elevators "fussing" when one of the elevators dinged. Appellant

stated Ms. Baxter pulled away from him and ran into the nearest elevator door which was not the one that had opened. Having hit her head, appellant said Ms. Baxter started vomiting and he took her back to the room for the night.

The medical examiner performed the autopsy on Ms. Baxter on October 22, 2012. She testified that the cause of death was blunt force trauma to the head and the posterior of the neck and that the manner of death was homicide. The medical examiner testified that the trauma to the head was made by a "severe" force, causing bleeding on Ms. Baxter's brain. Both the medical examiner and the treating neurosurgeon testified that the head injuries Ms. Baxter sustained were inconsistent with her running into an elevator from a distance of four feet. The neurosurgeon testified that Ms. Baxter's injuries were more akin to injuries caused by being in a car accident.

The State introduced extrinsic acts evidence pursuant to Rule 404 (b)[4] and Rule 413[5] concerning appellant's relationships with two other women— one whom he dated before he dated the victim and one whom he dated after the victim's death and through his trial. Both of the women testified that

_____

[4] OCGA § 24-4-404 (b).

[5] OCGA § 24-4-413.

appellant was verbally and physically abusive to them when he drank. Both women recounted instances where appellant inflicted blows to their heads.[6] The women also testified that appellant was violent when they tried to leave his vicinity because of his drunkenness and abusive behavior. In addition, one of the women testified that appellant had touched her anus against her will.

2. Appellant contends the evidence was insufficient to convict him of false imprisonment, aggravated sexual battery and aggravated assault. We address each count in turn.

(a) Although the jury returned a verdict of guilty on the count of false imprisonment, appellant was not convicted or sentenced for that crime.[7] Therefore, his allegations as to that charge are moot. See Byron v. State, 303 Ga. 218, 219 (1) (a) n. 3 (811 SE2d 296) (2018).

(b) A person commits an aggravated sexual battery "when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b). "[T]he term 'foreign object' means any article or instrument other than the

---

[6] Appellant's current girlfriend testified that on May 1, 2015, just a few weeks before the instant murder trial, appellant hit her in the head while they were having sex, causing her to black out.

[7] See fn. 1, supra.

sexual organ of a person." OCGA § 16-6-22.2 (a).  At trial, the State presented direct and circumstantial evidence of an aggravated sexual battery.  The prosecutor presented testimony from the nurses attending to Ms. Baxter while she was still alive in the hospital that Ms. Baxter had bruising of her anus as well as a tear in her rectum.  In addition to this testimony, the State presented photographs of the injury taken by the nursing staff while Ms. Baxter was still alive and being treated at the hospital.  While the medical examiner testified that she did not note any such injury at the time of the autopsy, she confirmed that the injury could have healed by the time the autopsy took place over a week after Ms. Baxter was admitted to the hospital.  The State also presented testimony from Ms. Baxter's close friend who stated that Ms. Baxter confided to her that when appellant drank heavily, he would sometimes place his finger in Ms. Baxter's anus even though she told him no and told him she did not like it.  The State also introduced excerpts from a letter from Ms. Baxter to appellant in which she indicated she did not like his drinking and his placing his finger "up [her] butt."  Additionally, appellant admitted to police that he had been drinking and that he and Ms. Baxter had been intimate on the night in question.

Appellant contends the evidence is insufficient because these particular injuries to Ms. Baxter could have been caused by his penis rather than by a foreign object. However, it is not for this Court to resolve any conflicts or inconsistencies in the evidence. Mullins v. State, 289 Ga. 102 (709 SE2d 783) (2011). See also Coleman v. State, 284 Ga. App. 811 (1) (644 SE2d 910) (2007). Based on the evidence presented, the jury was authorized to conclude that appellant committed an aggravated sexual battery on Ms. Baxter by placing his finger, a foreign object, in her anus and rectum without her consent. See Hardeman v. State, 247 Ga. App. 503 (2) (544 SE2d 481) (2001). See also Davis v. State, 326 Ga. App. 778 (1) (757 SE2d 443) (2014).

(c) As to the aggravated assault charge which underlies appellant's conviction for felony murder, the evidence was likewise sufficient. Appellant was the only person with Ms. Baxter when she was injured. Both the treating neurosurgeon, who saw Ms. Baxter when she was hospitalized, and the medical examiner testified that the amount of force Ms. Baxter sustained to her head was "severe" and was not consistent with running into a closed elevator door from a distance of four feet. In addition, there was evidence of prior difficulties between appellant and Ms. Baxter in which he violently abused her after consuming alcohol. On New Year's Day 2012, for example, appellant was

drunk when he punched Ms. Baxter in the face, breaking her nose. Ms. Baxter documented these injuries by taking photographs of her injuries and posting about the incident on Facebook on the day it occurred. The photographs and a screenshot of the Facebook posting were admitted as evidence at trial. Appellant admitted he had been drinking on the night Ms. Baxter was injured, though he asserted that her injuries were accidental. Appellant never called for assistance although Ms. Baxter was bleeding and had vomited. It was not until security personnel came to investigate the vomit and blood in the hallway that any assistance was rendered to Ms. Baxter. The bed in the hotel room was soaked in blood; however, Ms. Baxter was dressed in clean clothes, sitting on the floor, and moaning. She could not respond to anyone. Both appellant's current and former girlfriends testified that appellant was physically abusive when he drank alcohol, including beating them about the head on some occasions. The evidence was sufficient to convict appellant of aggravated assault. The evidence was otherwise sufficient to convict appellant for the remaining crime of felony murder (aggravated assault) for which he was sentenced along with aggravated sexual battery. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

3. Appellant complains the trial court erroneously admitted extrinsic

acts evidence pursuant to Rules 404 (b)[8] and 413.[9] The evidence in question

---

[8] OCGA § 24-4-404 provides:

(a) Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for:

(1) Evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under paragraph (2) of this subsection, evidence of the same trait of character of the accused offered by the prosecution;

(2) Subject to the limitations imposed by Code Section 24-4-412, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused or by the prosecution to rebut the same; or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; or

(3) Evidence of the character of a witness, as provided in Code Sections 24-6-607, 24-6-608, and 24-6-609.

(b) Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

[9] OCGA § 24-4-413 provides:

(a) In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant.

(b) In a proceeding in which the prosecution intends to offer evidence under this Code section, the prosecutor shall disclose such evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least ten days in advance of trial, unless the time is shortened or lengthened or pretrial notice is excused by the judge upon good cause shown.

comprised the testimony of two women, one of whom dated appellant prior to his dating Ms. Baxter, and another woman who dated appellant after Ms. Baxter's death. The prosecution sought admission of their testimony for the purpose of showing intent, motive, and the absence of accident or mistake. Relying on this Court's decision in Bradshaw v. State, 296 Ga. 650 (769 SE2d 892) (2015), the trial court ruled that the evidence would be admitted for the purposes of intent and absence of accident or mistake.  Prior to each woman's testimony at trial, the trial court instructed the jury on the limited purpose of

(c) This Code section shall not be the exclusive means to admit or consider evidence described in this Code section.

(d) As used in this Code section, the term "offense of sexual assault" means any conduct or attempt or conspiracy to engage in:

(1) Conduct that would be a violation of Code Section 16-6-1, 16-6-2, 16-6-3, 16-6-5.1, 16-6-22, 16-6-22.1, or 16-6-22.2;

(2) Any crime that involves contact, without consent, between any part of the accused's body or an object and the genitals or anus of another person;

(3) Any crime that involves contact, without consent, between the genitals or anus of the accused and any part of another person's body; or

(4) Any crime that involves deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person.

the evidence.[10]   The trial court also gave a final limiting instruction to the jury

prior to its deliberations.[11]

---

[10] The following instruction was given when the first girlfriend testified:

Ladies and gentlemen, in order to prove its case, the state has sought to bring in additional evidence that perhaps would show intent or disprove the defense of accident in this case. To do so, the state will offer evidence of prior wrongs — alleged wrongs committed by the accused. You are permitted to consider that evidence only insofar as it may relate to those issues and not for any other purpose. You may not infer from such evidence that the defendant is of a character that would commit such crimes. The evidence may only be considered to the extent that it may show intent and to disprove accident in the case and charges now on trial. Such evidence, if any, may not be considered by you for any other purpose. The defendant is on trial for the offenses charged in this bill of indictment only and not for any other acts.

Before you may consider any other alleged acts for the limited purpose stated, you must first determine whether the accused committed the alleged acts. If you do so, you must then determine whether the acts shed any light on the elements of the offenses charged for which the act was admitted in the indictment in this trial. Remember to keep in mind the limited use and prohibited use of this evidence about other acts of the defendant.

By giving this instruction, the court is in no way suggesting to you that the defendant has or has not committed any other acts. Whether or not such acts, if committed, prove anything is a matter solely within your, the jury's, determination.

The trial court reminded the jury of this instruction when the second girlfriend testified.

[11] The trial court gave the final limiting instruction regarding other acts evidence as follows:

Sometimes evidence is admitted for a limited purpose. Such evidence may be considered by the jury for the sole issue or purpose against that party for which the evidence is limited and not for any other purpose. Referring to the testimony of [the two girlfriends].

In order to prove its case, the state must show intent and must negate or disprove accident. To do so, the state has offered evidence of other wrongs allegedly committed by the accused. You are permitted to consider that evidence only insofar as it may relate to those issues and not for any other purpose. You may not infer from such evidence that the defendant is of a character that would commit such crimes. The evidence may be considered only to the extent that it may show the intent or absence of accident, which the state is required to prove in the crimes charged in the case now on trial. Such evidence, if any, may not be considered by you for any other purpose.

The defendant is on trial for the offenses charged in this bill of indictment only and not for any other acts, even though such acts may incidentally be criminal.

This Court has held that under Rule 404 (b)

> extrinsic act evidence may be admitted if a three-part test is met: (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403,[12] and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

Jones v. State, 301 Ga. 544 (802 SE2d 234) (2017) (citing Olds v. State, 299 Ga. 65 (2) (786 SE2d 633) (2016)).  "The major function of Rule 403 [as it relates to the admissibility of 404 (b) evidence] is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."  (Citation and punctuation omitted.)  Smart v. State, 299 Ga. 414 (2) (b) (788 SE2d 442) (2016).  In this case, appellant does not dispute

---

Before you may consider any other alleged acts for the limited purpose stated, you must first determine whether the accused committed the other alleged acts. If so, you must then determine whether the acts shed any light on the elements of the offense or issues for which the act was admitted in the crimes charged in the indictment.

Remember to keep in mind the limited use and the prohibited use of this evidence about other acts of the defendant.

By giving this instruction, the court is in no way suggesting to you that the defendant has or has not committed any other acts, nor whether such acts, if committed, prove anything. This is a matter solely for the jury's determination.

[12] OCGA § 24-4-403 provides:

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

the first and third prongs of the test were met, but rather alleges that the second prong of the test was not met,[13] contending that the danger of unfair prejudice substantially outweighed the probative value of the evidence.  We disagree.

When reviewing a trial court's decision on the admissibility of extrinsic acts evidence, a reviewing court will not disturb the decision unless there is a clear abuse of discretion.  See Jones v. State, supra, 301 Ga. at 548.  We have explained the concept of the probative value of evidence as follows:

> [P]robative value of evidence derives in large part from the extent to which the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. Probative value also depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered. The stronger the other proof, the less the marginal value of the evidence in question. And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence.

---

[13] Accordingly, our review of the admission of the extrinsic acts evidence is limited to the second prong of the test.

(Citations and punctuation omitted.) Id. at 547. See also Kirby v. State, 304 Ga. 472, 481 (4) (a) (819 SE2d 468) (2018).[14] In this case, the marginal value of the extrinsic acts evidence was great in comparison to the other available evidence. In fact, there were several obstacles that hindered the State's ability to gather evidence to establish proof of the crimes charged: (1) Ms. Baxter, though alive for a time, could not communicate; (2) there were no witnesses, other than appellant, to the events that led to Ms. Baxter's injuries; and (3) the crime scene had been cleaned before police could examine it. For direct evidence of what transpired on the night in question, the State was left only with appellant's differing narratives. Appellant's main narrative of Ms. Baxter's running into the elevator from a distance of four feet was inconsistent with the severity of Ms. Baxter's injuries according to the medical examiner and the treating neurosurgeon. Thus, the extrinsic acts evidence strongly helped to disprove appellant's claim that he had no intent to harm Ms. Baxter and that her injuries were accidental.

---

[14] "In considering the probative value of evidence offered to prove intent, these circumstances include the prosecutorial need for the extrinsic evidence, the overall similarity between the extrinsic act and the charged offense, and the temporal remoteness of the other act." Id.

The extrinsic acts evidence also served to corroborate Ms. Baxter's own documentation and shared confidences to her daughter and close friend about the abusive nature of her relationship with appellant, especially when appellant consumed alcohol. The extrinsic acts evidence was needed to adequately explain that appellant became violent with his romantic partners after consuming alcohol, including inflicting blows to their heads. One of the women also testified appellant used his fingers to touch her anus against her will, conduct which was similar to what appellant did to Ms. Baxter In addition, the extrinsic acts evidence was not remote in time as it pertained to appellant's relationships with women immediately prior to and immediately after his relationship with Ms. Baxter.

Any prejudicial impact of the extrinsic acts evidence was mitigated when the trial court gave the jury specific instructions about the limited purpose of the evidence. See, e.g., United States v. Boon San Chong, 829 F2d 1572, 1576 (11th Cir. 1987) ("The trial court mitigated any prejudicial effect the evidence may have had by giving the jury a cautionary instruction on the limited use of the extrinsic act evidence."). See also Benning v. State, 344 Ga. App. 397, 403 (810 SE2d 310) (2018). Therefore, it is unlikely that the jury convicted appellant based on the extrinsic acts rather than on the charged acts. Given the

circumstances of this case, we cannot say that the trial court abused its discretion when it admitted the extrinsic acts evidence thereby concluding that its probative value was not substantially outweighed by the danger of unfair prejudice. See Smart v. State, supra, 299 Ga. at 418-419.[15]

4. At trial, the jury was given the option to return verdicts on the charge of involuntary manslaughter predicated on simple battery or battery as a lesser included offense of the malice murder charge and the two felony murder charges. The jury returned a verdict of not guilty as to malice murder and guilty on the lesser included offense of involuntary manslaughter. The jury then determined appellant was guilty of the two felony murder charges, but not guilty of involuntary manslaughter as a lesser included offense of those charges. The trial court did not sentence appellant for involuntary manslaughter as a lesser included offense of malice murder, but rather merged it into appellant's conviction and sentence for felony murder (aggravated assault). On appeal, appellant contends the jury's verdicts of guilty as to involuntary manslaughter (simple battery/battery) and felony murder (aggravated assault) are mutually exclusive such that his felony murder

---

[15] Likewise, the trial court did not clearly abuse its discretion by admitting the extrinsic acts evidence that appellant touched the anus of one of his girlfriends against her will pursuant to Rule 413. See Robinson v. State, 342 Ga. App. 624 (4) (a), (b) (805 SE2d 103) (2017).

conviction must be set aside. This argument is without merit. The intent required for simple battery and battery is not inconsistent with the mens rea required for the greater offense of aggravated assault. See Griffin v. State, 296 Ga. 415 (2) (768 SE2d 515) (2015).[16] As such, the verdicts in question are not mutually exclusive, and appellant is not entitled to any relief. Id. at 417.

Judgment affirmed. All the Justices concur.

---

[16] In any event, this Court overruled the case law on which appellant relies. See State v. Springer, 297 Ga. 376 (1), (2) (774 SE2d 106) (2015).

Decided October 9, 2018.

Murder. Fulton Superior Court. Before Judge Newkirk.

Thomas M. Martin, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.