**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be**
**physically received in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**DEADLINES ARE NO LONGER TOLLED IN THIS**
**COURT. ALL FILINGS MUST BE SUBMITTED WITHIN**
**THE TIMES SET BY OUR COURT RULES.**

**October 23, 2020**

# In the Court of Appeals of Georgia

A20A1313. MCMILLAN v. THE STATE.

MARKLE, Judge.

Following a jury trial, Arielle Bridget-Renee McMillan was convicted of armed robbery (OCGA § 16-8-41 (a)), aggravated assault (OCGA § 16-5-21 (b), and theft by receiving stolen property (OCGA § 16-8-7 (a)).[1] She appeals from the trial court's denial of her motion for new trial, arguing that (1) the trial court erred in admitting evidence of other acts under OCGA § 24-4-404 (b) ("Rule 404 (b)"), and (2) the evidence was insufficient to support her convictions. For the reasons that follow, we affirm.

---

[1] McMillan was also charged with additional counts of armed robbery, aggravated assault, and aggravated battery, but she was acquitted of those charges.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that McMillan's convictions arise from two separate armed robberies that occurred between November and December 2015.

In November 2015, McMillan visited S. G. in a motel room in Gwinnett County in order to purchase drugs from him. When she arrived, three women were also in the room. She returned two hours later to purchase more drugs. As the other women opened the door to leave, a man holding a handgun burst into the room, while a second man stayed outside. S. G. then ran into the bathroom, chased by the armed assailant. A struggle ensued, and S. G. was shot in the leg. McMillan then ran out of the motel room, carrying S. G.'s cell phone and a portable safe containing cash and drugs. S. G. identified Arielle Monroe as the woman who robbed him, and he also provided a physical description. Police later determined that Arielle Monroe was actually Arielle McMillan.

Video surveillance from the incident showed McMillan and two men walking outside S. G.'s room around the time of the incident. It then showed all three leaving about eight minutes later, with McMillan carrying a black box.

2

In December 2015, McMillan was involved in another armed robbery. This time, C. V. and F. O. were getting out of a van at an apartment complex when a black male, along with an accomplice, approached them holding a handgun. The assailant pointed the gun at C. V., demanded his wallet, and took his cell phone, keys, and a necklace from around his neck. The assailant then chased F. O. and demanded his wallet, and, when the two subsequently struggled over the gun, F. O. was shot in the right leg. The two assailants then drove off in a gray SUV. C. V. called the police. When they arrived on the scene, they located a cell phone dropped by one of the assailants. The cell phone was eventually linked to the co-defendant, Christopher Donte Evans, who was also involved with McMillan in the prior armed robbery at the motel.[2]

A few months later, Doraville police stopped a vehicle McMillan was driving and in which Evans was a passenger. After leading police on a high speed chase, McMillan and Evans were arrested. When police searched the vehicle, they found various electronics, as well as the cell phone stolen earlier from C. V.

---

[2] Evans pled guilty to all charges.

A Gwinnett County police detective interviewed McMillan, and she identified herself on the video from the November robbery and admitted that she carried the black box out of the motel room.

Police also found that McMillan was using what was later determined to be C. V.'s stolen cell phone, which she had activated using a new number just 12 minutes after C. V. had reported the robbery. Additionally, the detective downloaded information recovered from the cell phone Evans dropped at the crime scene, and discovered text messages between Evans and the phone number now associated with McMillan. In one text message, sent after the incident involving S. G., McMillan asked Evans: "Did u shoot him, TF?" Videos from Evans's phone, dated December 18, 2015, also revealed selfie shots of himself, along with McMillan, driving in a silver SUV. The text messages further revealed details of a home invasion and robbery in October 2015, which the State used as Rule 404 (b) evidence at trial, and which also showed both McMillan's and Evans's phones in the vicinity of that robbery.

McMillan was charged with three counts each of armed robbery and aggravated assault, and two counts of aggravated battery in connection with the November and December offenses. Prior to the start of trial, the State indicated its intent to introduce

4

evidence of the October home invasion and robbery under Rule 404 (b) to show motive, intent, and plan. At a hearing, the State proffered text messages exchanged between Evans and McMillan, showing how the two planned the robbery: Evans provided McMillan with the address, directions on how to get to the home, and who would be home. The State also went through the details of the incident, which, as discussed below, were as the victims testified to at trial. The trial court admitted the evidence, finding that it was being admitted to show motive, intent, and plan, that the evidence was sufficiently similar considering temporal proximity, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice after considering the balancing test under OCGA § 24-4-403 ("Rule 403"). The trial court also gave a limiting instruction.

At trial, the victims of the October home invasion and armed robbery testified that two women came to their home, knocked on the door, and asked to use the phone because their car had broken down. Once the husband opened the door to let them in, a man with a gun also entered the house, and he ordered the victims to the floor. The man then tied them up and searched the house for a safe. When he was unable to find it, he poured bleach on the victims, and took two cell phones from the home before

leaving. The victims were able to give a description of the man, and the husband identified McMillan from a photo lineup.

McMillan did not testify at trial. She was convicted of one count of armed robbery and one count of aggravated assault in connection with the November robbery, and of the lesser included crime of theft by receiving stolen property for the December robbery. She subsequently filed a motion for new trial, which the trial court denied. This appeal followed.

1. McMillan argues that the trial court erred in admitting evidence of the prior October home invasion under Rule 404 (b) because the trial court failed to conduct a hearing on the admissibility of the evidence, and the State failed to indicate an appropriate purpose for this evidence[3] and to show by a preponderance of the evidence that McMillan committed the uncharged act. We disagree.

Under OCGA § 24-4-404 (b),

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including,

---

[3] In its notice of intent to introduce evidence of similar transactions, the State indicated that it was seeking to introduce this evidence for the purpose of showing intent, preparation, plan, knowledge, and absence of mistake, and/or in aggravation of punishment. At trial, it narrowed the purposes to showing motive, intent, and plan.

but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Also,

[t]o be admissible under Rule 404 (b), the State must show that "(1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by [Rule 403], and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

(Citations and footnote omitted.) *McWilliams v. State*, 304 Ga. 502, 509 (3) (820 SE2d 33) (2018). We review the admission of Rule 404 (b) evidence and the proper application of the Rule 403 balancing test for abuse of discretion, and the trial court's decision will not be disturbed unless there is a clear abuse. *Jones v. State*, 301 Ga. 544, 548 (2) (802 SE2d 234) (2017). With these principles in mind, we turn to McMillan's specific arguments.

McMillan first complains of the trial court's failure to hold a hearing, contending it was error to determine admissibility based on the State's evidentiary proffer alone. This argument is unavailing.

During its proffer, the State provided details of the home invasion. McMillan's trial counsel argued that the evidence regarding the victims's ability to identify McMillan as one of the persons involved in the home invasion was not strong; however, the State submitted that it had other evidence placing McMillan at the scene of the robbery. At no time did McMillan's counsel object to the State presenting its evidence via proffer, nor did she otherwise request an evidentiary hearing, despite the trial court's suggestion to conduct a hearing where the victims could be called to make an in-court identification of McMillan. McMillan's counsel declined to provide the victims another chance to identify her, and suggested that, if they were going forward with a hearing, she would waive her client's presence.

> Where counsel makes statements in her place, they may be received without verification unless the same is required by the opposing party at the time. Accordingly, in the absence of a timely objection when the evidentiary proffer was made to the trial court, the prosecutor's "in her place" proffer during the hearing will be treated on appeal as the equivalent of evidence.

(Citations and punctuation omitted.) *State v. Battle*, 344 Ga. App. 565, 571 (2) (812 SE2d 1) (2018); see also *Rank v. Rank*, 287 Ga. 147, 149 (695 SE2d 13) (2010).

8

Given that McMillan's counsel did not object to the State's proffer when made, the trial court did not abuse its discretion by not conducting an evidentiary hearing.[4]

Turning to the merits of whether this evidence was admissible under Rule 404 (b), we conclude that McMillan's challenge is without merit.

(a) Although McMillan argues that the State sought to introduce this evidence for an improper purpose, her argument is belied by the record.

In this case, the other act was relevant to show a specific criminal intent to commit a robbery, thus satisfying the first prong of the Rule 404 (b) test.

> [A] defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the [State] to prove intent, which it may prove by qualifying Rule 404 (b) evidence[.] . . . Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.

(Citation and punctuation omitted.) *Bradshaw v. State*, 296 Ga. 650, 656-657 (3) (769 SE2d 892) (2015); see also *Hood v. State*, __ Ga. __ (2) (847 SE2d 172, 178 (2))

---

[4] Although the former rules of evidence and Uniform Superior Court Rule 31.3 required a hearing to address the admissibility of this type of evidence, the new Evidence Code has no such requirement. *State v. Battle*, 344 Ga. App. at 567 (1).

9

(2020) ("Because Hood entered a plea of not guilty, she made intent a material issue, and the State may prove intent by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue.") (citation and punctuation omitted).

Here, the October and November robberies are similar and require the same intent. Both armed robberies involve McMillan planning with a male accomplice, making contact with the victims to gain entrance to their property, and the male then entering the location and threatening the victims with a handgun. And, each crime was committed within a month of the other. Thus, the evidence of the home invasion and robbery was relevant to an issue other than McMillan's character, namely, intent. See *Moton v. State*, 351 Ga. App. 789, 793 (833 SE2d 171) (2019) ("Evidence of prior drug activity is highly probative of intent to sell a controlled substance.") (citation omitted); see also *Westbrook v. State*, 355 Ga. App. 334, 336-337 (1) (844 SE2d 208) (2020) (evidence of Westbrook's earlier robbery conviction was necessary to show comparable intent to rob in the current case).

(b) The trial court also was authorized to conclude that the probative value of the other act evidence was not substantially outweighed by the danger of unfair

10

prejudice, under the second prong of the Rule 404 (b) test. As our Supreme Court has explained,

> [p]robative value of evidence derives in large part from the extent to which the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. Probative value also depends on the marginal worth of the evidence – how much it adds, in other words, to the other proof available to establish the fact for which it is offered.

*McWilliams*, 304 Ga. at 509-510 (3). Also,

> we must be mindful that the exclusion of relevant evidence for this reason is an extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence. For this reason, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.

(Citation and punctuation omitted.) *Burgess v. State*, 349 Ga. App. 635, 642 (3) (824 SE2d 99) (2019).

11

Here, because McMillan pled not guilty, she placed her intent in issue, and the State was required to prove that element. Thus, the prosecutorial need for the other act evidence was strong because much of the evidence against McMillan in the instant case was circumstantial in nature. *Burgess*, 349 Ga. App. at 643 (3) (extrinsic evidence aided the State in proving knowledge and intent where evidence against Burgess was mostly circumstantial).

Moreover, the trial court advised the jury, both when the evidence was admitted and again during the charge of the court, that it could consider this evidence only for limited purposes and not to show that McMillan possessed the character to commit the crimes as charged. These limiting instructions minimized any prejudicial impact of the testimony. *McWilliams*, 304 Ga. at 511 (3). Thus, the trial court did not abuse its discretion in finding that the probative value of this evidence outweighed any prejudice.

(c) As for the third prong of the Rule 404 (b) test, there was sufficient proof that McMillan committed the prior act. Nevertheless, McMillan argues that the evidence was insufficient to identify her as a participant in the October incident. McMillan's argument is premised on the fact that the victims's photo lineup identification was questionable. However, the State proffered other evidence, via text

12

messages and cell tower data, which linked McMillan to the home invasion. This evidence was sufficient to enable a jury to find by a preponderance of the evidence that McMillan committed the other act, as the trial court found. See *Flowers v. State*, 307 Ga. 618, 621 (2) (837 SE2d 824) (2020). We find no basis to conclude that the trial court abused its discretion in this regard.

2. McMillan next argues that the evidence was insufficient to support her convictions because the State presented no evidence that she knew or should have known that the cell phone she possessed was stolen from C. V., and there was no evidence, excluding every reasonable hypothesis but for her guilt, establishing that she was a party to the crimes charged. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent. Thus, in evaluating the sufficiency of the evidence, we do not assess witness credibility or weigh the evidence, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt. And the verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

(Citations and punctuation omitted.) *Johnson v. State*, 351 Ga. App. 690, 692 (832 SE2d 676) (2019).With these principles in mind, we turn to the specific charges against McMillan.

(a) *Armed robbery and aggravated assault.*

Under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]" A person commits the offense of aggravated assault when he assaults another person, with the intent to rob or with a deadly weapon. See OCGA § 16-5-21 (b) (1), (2) (July 2015). Furthermore,

> A participant to a crime may be convicted although [s]he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime.

14

(Citation omitted.) *Huntley v. State*, 331 Ga. App. 42, 43 (1) (769 SE2d 757) (2015). Whether McMillan was a party to the crimes, and aided and abetted in the commission thereof, is a jury question. Id.

Here, with respect to the armed robbery and aggravated assault against S. G., the evidence, as summarized above, was more than sufficient for the jury to find McMillan guilty of each of the charged offenses as a party to the crimes. See *Gay v. State*, 351 Ga. App. 811, 815 (1) (833 SE2d 305) (2019). The evidence showed that McMillan was with the other male assailant in S. G.'s motel room when he was threatened and eventually shot with a handgun, and the video surveillance showed McMillan in possession of the safe moments after the robbery. Further, McMillan admitted that she carried the safe from the room and that she was on the surveillance tape. As such, this evidence was sufficient to support McMillan's convictions for armed robbery and aggravated assault as a party to the crimes.[5] OCGA §§ 16-8-41 (a), OCGA 16-5-21 (b) (1), (2) (July 2015).

---

[5] McMillan argues that the State failed to prove the charged offenses to the exclusion of every reasonable hypothesis but for her guilt; however, this argument is unavailing where, as here, there was not only circumstantial evidence but also direct evidence of her guilt. See *Houseworth v. State*, 348 Ga. App. 119, 124 (1) (b) (820 SE2d 231) (2018) (rule applies only where the evidence is entirely circumstantial).

15

(b) *Theft by receiving stolen property.*[6]

With respect to the December robbery, under OCGA § 16-8-7 (a),

[a] person commits the offense of theft by receiving stolen property when [s]he receives, disposes of, or retains stolen property which [s]he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control or lending on the security of the property.

The State may prove McMillan's knowledge that she was in possession of C. V.'s stolen cell phone by circumstantial evidence. See *Daughtie v. State*, 297 Ga. 261, 262 (2) (773 SE2d 263) (2015).

Here, the evidence placed McMillan in possession of C. V.'s phone just 12 minutes after it was stolen, and forensic reports show the phone was activated using her SIM card. A jury may reasonably infer from this evidence that McMillan knew the phone was stolen, excluding every other reasonable hypothesis except that of her guilt. See *Miller v. State*, 351 Ga. App. 757, 765 (1) (c) (833 SE2d 142) (2019) (possession of van mere hours after it was stolen, together with other circumstantial

---

[6] McMillan's counsel requested this charge as a lesser included offense to armed robbery in connection with the offense against C. V.

16

evidence, was sufficient to support an inference the defendant knew it was stolen, and thus his conviction for the crime of theft by receiving); see also *Clark v. State*, 289 Ga. App. 612, 615 (1) (658 SE2d 190) (2008) (questions as to the reasonableness of hypotheses are generally decided by the jury, and where the jury finds that circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless insupportable as a matter of law).

McMillan also argues that other testimony at trial, particularly her mother's, shows that she was unaware the phone was stolen. However, it was for the jury to determine the credibility of the witnesses and to resolve any conflicts in the evidence. *Powell v. State*, 352 Ga. App. 14, 16 (1) (833 SE2d 602) (2019); see also *Johnson*, 351 Ga. App at 692 (appellate court does not assess witness credibility). As shown by its verdict, the jury disbelieved the mother's testimony and found the testimony of the other witnesses credible. As a result, the evidence was sufficient to support a conclusion that McMillan committed the crime as charged, and McMillan's challenge to the sufficiency of the evidence fails.

Accordingly, the trial court properly denied McMillan's motion for new trial, and we affirm.

*Judgment affirmed. Reese, P. J., and Colvin, J., concur.*