**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**December 8, 2023**

# In the Court of Appeals of Georgia

A23A1629. BREWTON v. THE STATE.

LAND, Judge.

On appeal from his conviction after a jury trial for aggravated assault and reckless conduct arising from a shooting on the Flint River, Samuel Brewton III argues that the evidence was insufficient, that the trial court erred when it admitted evidence of prior acts, and that trial counsel was ineffective. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the

prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the verdict, the record shows that in the late afternoon of April 11, 2020, a grandfather and his daughter were fishing from a canoe on a section of the Flint River known as Yellow Jacket Shoals, with the daughter's husband, her 17-year-old son, the grandfather's son, and a four-year-old grandson traveling near them in kayaks. As the family continued to fish in front of the cabin property owned by Brewton's family, the husband noticed that Brewton, whom he knew, was standing on the bank firing a series of weapons "away from the river," and that a couple was also present there. As the grandfather and his daughter were releasing a fish they had caught, Brewton fired a loud shot that hit the water 5 or 6 feet from both the daughter and her husband, splashed water into the daughter's face, and sank out of sight. As the daughter screamed in fear, the husband looked back at the Brewton property, where he saw Brewton turning and walking away from the river "like he was in a hurry," holding a rifle. The son, who was in a kayak with his four-year-old child, testified that he saw Brewton, whom he knew, in front of the cabin and that he was fishing outside of his kayak when he heard an "extremely loud

2

gunshot ring out across the river." The son testified that this rifle shot was "different" from the earlier discharges, "in [his] direction," and "terrifying."

In a phone call that evening, the sister-in-law of the area's game warden called Felix Coker, who had been drinking with Brewton on the property that afternoon. When the woman asked Coker whether he and Brewton had been shooting at people that afternoon, Coker responded, "[O]nly if they're fishing."

Brewton was arrested and, after being advised of his rights, told the investigator that he had been "shooting at turtles in the river on a rock." He also stated, however, that "they're stealing his fish," that "the fish belong[ed] to him because the fish were on his property,"[1] and that "they're ganging up on me." Brewton was charged with aggravated assault on the grandfather, the daughter, the

---

[1] See, e.g., *Parker v. Durham*, 258 Ga. 140, 141 (365 SE2d 411) (1988) (a riparian owner whose chain of title is traceable to a grant from the State before 1863, when the predecessor to OCGA § 44-8-5 was adopted, has "sole and exclusive" rights of fishery extending to "the thread of the stream"), superseded by OCGA § 44-8-5 (c) (Laws 2023, Act 92, § 1, effective July 1, 2023) (including the General Assembly's findings that "the state procured ownership of all navigable stream beds within its jurisdiction upon statehood and, as sovereign, is trustee of its peoples' rights to use and enjoy all navigable streams capable of use for fishing, hunting, passage, navigation, commerce, and transportation, pursuant to the common law public trust doctrine"; that "[t]he state continues to hold title to all such stream beds, except where title in a private party originates from a valid Crown or state grant before 1863"; and that "the public retained the aforementioned rights under such doctrine even where private title to beds originates from a valid grant").

daughter's husband, and that couple's son, as well as reckless conduct as to the son and the younger grandson.

In April 2021, the State filed a notice of its intent to present evidence of other acts under OCGA § 24-4-404 (b). This evidence included (a) a February 2020 Facebook video in which Brewton and Coker expressed their intent to track down deer poachers in the area, with Brewton stating that he was always armed with a Ruger military rifle, and showing him discharging a clip from the weapon into the woods; (b) a February 2017 phone call in which Brewton stated that he was in fear of his life, had seen people across the pond from his house, and had shot at them; (c) a 2004 misdemeanor guilty plea for simple assault, trespass and reckless conduct arising from a December 2002 incident during which Brewton had fired 20 shots into a neighbor's stereo in the neighbor's presence; (d) a January 2004 guilty plea to simple assault and signing a false name arising from Brewton's attempt to run over deputies investigating a burn on his and the same neighbor's property, after which Brewton advanced on the deputies with a rifle in his hand; and (e) a 2003 conversation in which Brewton told the grandfather victim, who had been a customer at the pharmacy where Brewton worked, that he was upset enough about trespassers or poachers on his property to discharge a large magazine of ammunition in the

4

direction of a flashlight he saw in the woods around his house. The State argued at the hearing on the subject that all five incidents were relevant to prove identity, intent, and absence of mistake. Although the trial court excluded some proffered evidence as not probative, the trial court admitted the evidence outlined above as relevant and more probative than unduly prejudicial to prove intent.

After a jury found him guilty on all counts, Brewton was convicted, sentenced to 40 years with 10 to serve and banished from the Griffin Judicial Circuit (including Upson County) for the duration of his sentence. His motion for new trial was denied.

1. Although Brewton argues that the evidence was insufficient, it was for the jury to determine whether he fired the rifle shot with the requisite intent of putting the first four victims in reasonable apprehension of suffering an immediate violent injury. See OCGA §§ 16-5-20 (a) (1), 16-5-21 (a) (defining assault, and aggravated assault as assault with a deadly weapon). Likewise, it was for the jury to decide whether Brewton endangered the fifth and sixth victims by "consciously disregarding a substantial and unjustifiable risk" that shooting towards them would endanger their safety, constituting "a gross deviation from the standard of care which a reasonable person would exercise in the situation." OCGA § 16-5-60 (b). The evidence outlined above was sufficient to sustain Brewton's conviction for both aggravated assault and

5

reckless conduct. See *Craft v. State*, 309 Ga. App. 698, 700-701 (2) (710 SE2d 891) (2011) (evidence that a bullet came through an apartment resident's window while she was sitting on the floor, where she stayed for ten minutes afterward, authorized a conviction for aggravated assault); *Bowers v. State*, 177 Ga. App. 36, 38 (2) (338 SE2d 457) (1985) (evidence authorized a charge on reckless conduct as a lesser included offense of aggravated assault when a jury could have believed either that the defendant intended to shoot the victim on a sailboat anchored in a river or that defendant was not aware of the presence of the victim but was merely conducting target practice); *Jackson*, supra.

2. Brewton also argues that the trial court erred when it authorized the admission of the five instances of other-acts evidence concerning his penchant for brandishing and/or discharging firearms during perceived or actual disputes with neighbors, law enforcement officers, and others. We disagree.

Under OCGA § 24-4-404 (b) ("Rule 404 (b)"),

> extrinsic act evidence may be admitted if a *three-part test* is met: [a] the evidence is relevant to an issue in the case other than the defendant's character, [b] the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403, and [c] there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

6

(Citation and footnote omitted; emphasis supplied.) *McWilliams v. State*, 304 Ga. 502, 509 (3) (820 SE2d 33) (2018); see also *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017), and *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016).

"Relevant evidence" is defined as that evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. OCGA § 24-4-403 ("Rule 403"), which governs the second required showing, provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This statute "is designed to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Moon v. State*, 312 Ga. 31, 51 (3) (a) (860 SE2d 519) (2021). "The third part of the test is a preliminary question of fact for the trial court. Other-acts evidence may be admitted if the court concludes that the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed." (Citation and punctuation omitted.) Id. "When reviewing a trial court's decision on the admissibility of extrinsic acts evidence, a

7

reviewing court will not disturb the decision unless there is a clear abuse of discretion." *McWilliams*, 304 Ga. at 509 (3).

The central issue in the case was Brewton's intent in firing the rifle shot that terrified these victims, which he placed at issue when he pled not guilty. *Hood v. State*, 309 Ga. 493, 499-500 (2) (847 SE2d 172) (2020).

> [T]he extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. *Probative value also depends on the marginal worth of the evidence – how much it adds, in other words, to the other proof available to establish the fact for which it is offered*. The stronger the other proof, the less the marginal value of the evidence in question. And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence.

(Citation and punctuation omitted; emphasis supplied.) *McWilliams*, 304 Ga. at 509-510 (3).

Here, more than one victim testified that they did not know whether the shooter knew they were on the river. Under these circumstances, which required the State to prove Brewton's intent to assault or endanger them, "the marginal value of the extrinsic acts evidence was great in comparison to the other available evidence,"

8

which did not include any testimony from Brewton himself. *McWilliams*, 304 Ga. at 510 (3). Each of the other acts introduced by the State also shed light on Brewton's tendency, consistent over many years, to perceive the presence of other people on or near his land or his portion of the river, including law enforcement officers, as a serious or even mortal threat, and to respond to such threats without deliberation and with violence. There was no abuse of discretion here in admitting evidence of these acts as (a) tending to prove his intent to put these victims in reasonable fear or to disregard their safety, (b) not unduly prejudicial in light of their probative value on that issue, and (c) committed by Brewton rather than any other person. See *Moon*, supra, 312 Ga. at 53 (3) (c) (i) (prior aggravated assault convictions were admissible to prove defendant's intent to violently injure victims by firing a gun at them while they were in their car).

3. Brewton also argues that trial counsel was ineffective in failing to object to (a) testimony concerning "folklore," "legend" or "rumors" about the Yellow Jacket Shoals area and (b) argument and questions concerning Brewton's reputation for harassing boaters there. We disagree.

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced

the defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). As to deficient performance, "every effort must be made to eliminate the distorting effects of hindsight," and the trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation and punctuation omitted.) *White v. State*, 265 Ga. 22, 23 (2) (453 SE2d 6) (1995). As to prejudice, a defendant need only show "a reasonable probability of a different outcome" due to trial counsel's deficient performance. (Punctuation and footnote omitted.) *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008). Finally, the question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) The record shows that more than one witness testified about being shot at as they floated past the Brewton property. When other witnesses testified about the "legend" of violence at Yellow Jacket Shoals, Brewton's trial counsel objected on hearsay grounds, and these objections were sustained. Trial counsel also testified at the hearing on the motion for new trial that he elected to "lean into" the State's

10

narrative that the reports of shootings were fictitious by introducing testimony that law enforcement had never been called there concerning a shooting. Counsel also noted that repeated objections to hearsay would have only drawn unwarranted attention to it. Because this strategy was not unreasonable, we cannot say that trial counsel's performance on this issue was inadequate. See *Walker v. State*, 308 Ga. 33, 39 (3) (a) (838 SE2d 792) (2020) (trial counsel's decision to forgo objections so as not to draw further attention to witnesses' statements was a reasonable strategy).

(b) (i) The record also shows that although the State improperly suggested in opening statement that Brewton had a "propensity" for shooting at boaters on the river, the prosecutor immediately corrected herself to say that Brewton "will occasionally shoot a gun in the air to scare [boaters] off." See *Kirby v. State*, 304 Ga. 472, 487 (4) (b) (819 SE2d 468) (2018) (evidence of a defendant's "inclination" toward violence "is a classic improper propensity argument"). Trial counsel also testified that although he could not recall why he did not object, the prosecutor "backed away from where she was going with the propensity and went in a different direction." In light of the State's retreat from this suggestion as well as the trial court's instruction that opening statements were not evidence, we cannot second-guess the trial court's determination that Brewton suffered no prejudice in this

11

respect. See *Cruz v. State*, 305 Ga. App. 805, 812 (3) (e) (700 SE2d 631) (2010) (affirming denial of an ineffective assistance claim when trial counsel could not recall the reason for a trial decision but when the record supported the trial court's finding that the decision was reasonable trial strategy).

(ii) The State concedes on appeal that a prosecutor's question about Brewton's "reputation with the community . . . on people fishing in front of his cabin" was improper because Brewton did not introduce this topic himself. See OCGA §§ 24-4-404 (a) (1), 24-4-405 (a). The response to the improper question, however, was that the witness had "always known that *they* were very protective. You could not fish there." (Emphasis supplied.) Even in the absence of an objection from counsel, Brewton cannot show that he was prejudiced by the admission of evidence as to the reputation of the location or its owners as protective of fishing rights because such evidence was cumulative of abundant and direct evidence of Brewton's own strong feelings on the subject. See *Sawyer v. State*, 308 Ga. 375, 383-384 (2) (b) (839 SE2d 582) (2020) (no prejudice shown from admission of evidence as to defendant's propensity for violence when it was cumulative of other evidence on the same subject).

Finally, and given the quantity and quality of evidence against Brewton, we cannot say that the cumulative effect of trial counsel's few arguable deficiencies, as discussed above, deprived Brewton of a fair trial. See *Huff v. State*, 315 Ga. 558, 567-568 (6) (883 SE2d 773) (2023) (a cumulative-effect assertion of ineffective assistance failed where a defendant had not demonstrated any significant prejudicial effect from assumed trial court error and counsel's deficient performance in failing to object to the "gangster style" of the crime at issue).

For all these reasons, the trial court did not err when it denied Brewton's motion for new trial.

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur*.